GUARDIANSHIP OF MARGARET ENOS.

No. 96-P-982.

Middlesex. September 10, 1996. - September 25, 1996.

Present: DREBEN, JACOBS, & FLANNERY, JJ.

*Constitutional Law,* Full faith and credit. *Due Process of Law,* Notice, Hearing. *Practice, Civil,* Appeal. *Guardian,* Incompetent person.

In proceedings in a Massachusetts Probate Court in which a guardian appointed by a Florida court sought surrender to its custody of its ward who had been removed from Florida to Massachusetts by her daughter without authorization from the guardian or any court and the daughter sought her own appointment as guardian, the probate judge correctly ordered the surrender of the ward for return to Florida and dismissal of the daughter's petition for guardianship for reasons of full faith and credit, interstate comity, and the superior convenience of that forum. [362-363, 364]

In the circumstances of proceedings involving the surrender of a ward to the custody of a guardian appointed by a Florida court after the ward had been removed from Florida to Massachusetts by her daughter without authorization of the guardian or any court, a probate judge acted within his discretion in ordering the daughter to pay the fee of a Massachusetts guardian ad litem appointed during the course of the proceedings. [363-364]

CIVIL ACTION commenced in the Middlesex Division of the Probate and Family Court Department on January 5, 1996.

PETITION filed in the Middlesex Division of the Probate and Family Court Department on January 10, 1996.

The cases were heard by *Eliot K. Cohen,* J.

*David Berman* for Katherine A. Doucette.

*Peter C. Netburn* for Margaret Enos.

FLANNERY, J. On December 1, 1995, Margaret Enos, a woman of some ninety years, was living in her home in St. Petersburg, Florida, with her dog Molly. Nearby were her sister Ellie, in a nursing home, and her niece Mary Lambert.

In July, 1994, in a guardianship proceeding, the Probate Division of the Pinellas County, Florida, Circuit Court had determined Enos to be incapacitated, and had appointed the Adult Comprehensive Protection Services, Inc. (ACPS), a not-for-profit charitable corporation, to be her guardian. ACPS is responsible for providing care for Enos, and it has virtually complete authority over her person and property, including her place of residence and right to travel.

That arrangement ended, at least temporarily, on December 2, 1995, when Enos' daughter, Katherine Doucette, acting without authorization from ACPS or any court, removed Enos from Florida to Massachusetts, initially to the Doucette residence in North Reading and shortly thereafter to Arnold House, a nursing facility in Stoneham. Doucette's stated reason for her action is that her mother was being neglected by ACPS.[1]

On January 5, 1996, ACPS, armed with a Florida court order requiring the surrender of Enos to its custody, commenced an action in the Middlesex Probate and Family Court seeking the return of Enos to Florida and related relief.[2] Five days later, Doucette filed a petition in the same court seeking her own appointment as guardian of her mother. A guardian ad litem (GAL) was appointed and she filed a report. After hearing, the probate judge ruled in favor of ACPS, ordered the surrender of Enos to ACPS for return to Florida, ordered dismissal of Doucette's petition, and retained jurisdiction "only to the extent" of making an award of fees, costs, and expenses to ACPS. That decision is the subject of this appeal. The facts herein are taken from the "Rationale" of the Probate Court and the parties' filings. We affirm the orders appealed from, except that Enos' return to Florida shall be stayed until the court there with jurisdiction of this matter determines that return to Florida continues to be in her best interest.[3]

Doucette contends that: (1) the Florida guardianship deci-

---

[1]Doucette is under indictment in Florida for interfering with custody, a felony. She is resisting extradition to that State. See *Doucette* v. *Commonwealth*, No. 96-P-956 (Mass. App. Ct. filed June 11, 1996).

[2]Relying on the parties' representations and the Probate Court docket for this action (No. 96-P-0050), we presume that the complaint was mistakenly dated January 5, 1995, rather than January 5, 1996.

[3]The record here does not show that the Middlesex Probate Court stayed that part of its order of February 29, 1996, and a stay has not been sought from us. Enos remains in Stoneham, however, and it appears from the par-

sion is not entitled to full faith and credit here; (2) the Probate Court erred in ordering her to pay the fee of the Massachusetts GAL; and (3) the Middlesex Probate Court should have appointed a guardian for Enos. We consider these contentions in turn.

Doucette asserts that guardianship decisions are not entitled to full faith and credit in other States and that, even if they are generally so entitled, the Florida decision here can not be honored because it was entered without notice and hearing to Doucette, thus denying her due process of law. The latter contention is puzzling since it appears from the record that Doucette appeared and participated in the Florida proceeding in June 1994, i.e., before the appointment of ACPS.[4] Similarly, in March, 1995, about nine months before she brought her mother here, she moved the Florida court for an order allowing the removal, and the Florida court appointed a guardian ad litem to look into and report on the advisability of such a move.[5] At the time Doucette took action, the Florida court had not yet ruled on her motion.

In any event, two considerations underlie our rejection of the latter argument. It was not made to the Middlesex Probate Court, and we decline to consider it for the first time on appeal. *Trustees of the Stigmatine Fathers* v. *Secretary of Admn. & Fin.*, 369 Mass. 562, 565 (1976). Additionally, there is no showing that it cannot be made and considered in the Florida courts.

Although Doucette correctly notes that guardianship decisions have occasionally been denied full faith and credit in some jurisdictions, see for example *Mack* v. *Mack*, 618 A.2d 744, 749-751 (Md. 1993) (discussing the scope of the full faith and credit clause and concluding that a Florida guardianship order was not entitled to full faith and credit) and cases cited

ties' filings that they have agreed to an informal stay during the pendency of this appeal.

[4]In January, 1996, Doucette submitted an affidavit to the Middlesex Probate Court stating that she had mistakenly thought that she could not oppose the guardianship petition because she was not a resident, registered voter, and licensed driver in Florida. That averment is difficult to reconcile with her participation in the Florida case in 1995, and the probate judge disbelieved that statement.

[5]That GAL, reporting in August and October, 1995, counselled against the proposed move on the ground, among others, that it would be against Enos' wishes.

therein, historically, Massachusetts courts have declined to give another jurisdiction's valid guardianship order full faith and credit only when the best interest of the ward required otherwise. *Woodworth* v. *Spring*, 4 Allen 321, 325 (1862).[6] But whether honoring the Florida decisions here is mandatory or optional is academic when no reason not to accord them full faith and credit has been shown. It is undisputed that Florida has both personal and subject matter jurisdiction of the case. Moreover, Florida is plainly the more convenient forum for resolving the dispute. All of the potential witnesses but the Doucettes are there, and Doucette has already submitted herself to that jurisdiction by her participation in those proceedings. To be sure, the paramount consideration in this matter is the well-being of Enos, and whether travel would be an unacceptable risk to her may be an issue. However, the Florida court is fully capable of deciding whether she should stay in Stoneham, as well as all other contested issues.[7]

Doucette urges at length that her mother belongs here because ACPS was mistreating her, and the Probate Court judge erred in his failure to so rule. The probate judge may have been skeptical of Doucette's assertions, but, regardless, her argument misses the actual gist of the Probate Court's ruling. It is that her contentions, true or false, must be presented in Florida for reasons of full faith and credit, interstate comity, and the superior convenience of that forum. We agree.

Doucette also appeals from the Probate Court's order that she "pay the bill" of the Middlesex GAL. The appointment of that GAL and the cost of her subsequent work resulted from Doucette's bringing her mother here and filing her own guardianship petition in apparent response to ACPS's commencement of this action. Those measures were for naught, but they were caused by Doucette, and on that basis the judge

---

[6]See Johns, Gottlich, & Carson, Guardianship Jurisdiction Revisited: A Proposal for a Uniform Act, 26 Clearinghouse Rev. 647 (1992) (discussing the problems created when courts arbitrarily assume jurisdiction in guardianship matters and proposing a uniform guardianship jurisdiction act incorporating principles of full faith and credit and comity). See also Hurme, Current Trends in Guardianship Reform, 7 Md. J. Contemp. Legal Issues 143, 176-178 (1995-1996).

[7]Of course, arguing that she should stay in Stoneham because she is there begs the question in issue. An uninformed assumption to that effect ratifies conduct by Doucette that the courts of two States have found to be unlawful.

ordered her to pay for them. That order was within his discretion. Indeed, in the circumstances of this case, there is no rationale for payment by anyone else.

Finally, Doucette argues that the probate judge erred in dismissing her petition for guardianship on the ground that Florida has exclusive jurisdiction of the parties and the subject-matter.[8] Whether the probate judge declined in the final analysis to exercise jurisdiction because there was no reason to do so, or saw himself as without power to act, is not entirely clear. We decline to be drawn into that sterile debate, however, since the judge's decision is clearly correct regardless of its basis.

Subject to the stay ordered herein, we affirm the orders of the Probate Court and award double costs to ACPS. Mass. R.A.P. 25, as amended, 376 Mass. 949 (1979).

*So ordered.*

---

[8]The probate judge stated that "[t]he State of Florida and not the Commonwealth of Massachusetts has the jurisdiction to appoint the guardian and supervise the administration of the Guardianship Estate of Margaret Enos."