NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11826

CUSTODY OF VICTORIA.


Suffolk.     May 4, 2015. - October 21, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Child Custody Jurisdiction Act.  Massachusetts Child Custody
     Jurisdiction Act.  Jurisdiction, Custody of child, Probate
     Court.  Probate Court, Custody of child, Jurisdiction.
     Minor, Custody.



     Petition for custody filed in the Suffolk Division of the
Probate and Family Court Department on March 14, 2014.

     Questions of law were reported to the Appeals Court by
Jeremy A. Stahlin, J.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Michael F. Kilkelly for the mother.
     Jeanne M. Kaiser for the child.
     Brian Pariser for Department of Children and Families.
     Benjamin C. Mizer, Principal Deputy Assistant Attorney
General, William C. Peachey, Elizabeth J. Stevens, & Erez
Reuveni, of the District of Columbia, for the United States,
amicus curiae, submitted a brief.

HINES, J.  In this case, we determine whether the
Massachusetts Child Custody Jurisdiction Act (Massachusetts act
or act), G. L. c. 209B, grants a Massachusetts court
jurisdiction to decide the custody of an unaccompanied refugee
minor transferred to Massachusetts by the Office of Refugee
Resettlement, a Federal agency.[1]  The issue is presented on a
report from a judge of the Suffolk Division of the Probate and
Family Court Department.  The judge concluded that Massachusetts
lacks jurisdiction under the act, but jurisdiction was
nonetheless proper where Massachusetts is "an appropriate court"
under Federal law governing custody and resettlement of
unaccompanied refugee minors.[2]  See 45 C.F.R. § 400.115(a)

---

[1] The Office of Refugee Resettlement (office) is a Federal
agency within the United States Department of Health and Human
Services.  See 8 U.S.C. § 1521 (2012).  The office was created
to facilitate resettlement of refugees, including unaccompanied
refugee minors.  Pub. L. No. 96-212, 96th Cong., 2d Sess., Title
I, § 101, Title IV, §§ 411, 412(d), 94 Stat. 102 (1980).  Under
that authority, the office provides foster care services and
benefits to certain refugee children who are unaccompanied by a
relative available to provide long-term care.  In situations
such as here, where a victim of trafficking is apprehended by
the United States Department of Homeland Security, the child may
be eligible for services under the office's unaccompanied
refugee minor program, in which case, the child is transferred
to the care and custody of the office.  Pub. L. No. 110-457,
110th Cong., 2d Sess., Title II, Subtitle B, § 212, 122 Stat.
5044 (2008).

[2] The minor child in this case turned eighteen on the date
of argument.  According to the director of the office, in April,
2015, the child was one of approximately 160 children and youths
served by the Massachusetts unaccompanied refugee minors

(2012). We conclude that G. L. c. 209B, § 2 (a) (2), as applied to the facts of this case, grants jurisdiction to Massachusetts courts because no other State has "home [S]tate" jurisdiction and it is in the best interest of the child that a Massachusetts court assume jurisdiction of the custody proceeding.[3]

Background. The child in this case, Victoria,[4] was born in Mexico in 1997. She moved with her mother to Texas when she was six years old, returned to Mexico to live with her maternal grandmother when she was ten years old, and moved again to Texas to live with her mother and stepfather when she was thirteen years old. When Victoria was fourteen years old, in 2012, she reported to the school nurse that she was being sexually exploited, and law enforcement was notified of the report.

After investigating a prostitution ring in which Victoria was involved,[5] local law enforcement referred Victoria to the United States Department of Homeland Security and, on April 28,

---

program. We consider this issue because it is important and fully briefed by the parties. See Commonwealth v. Barnes, 461 Mass. 644, 659 n.26 (2012), citing Wellesley College v. Attorney Gen., 313 Mass. 722, 731 (1943).

[3] We acknowledge the amicus brief filed by the United States Department of Justice.

[4] A pseudonym.

[5] On September 8, 2013, a perpetrator against the child pleaded guilty in a criminal case and was sentenced to 111 months in prison for solicitation of a minor.

2012, that department referred Victoria to the Office of Refugee Resettlement (office).  On or about that same date, Victoria was placed at the Shenandoah Valley Juvenile Detention Center in Virginia.  Victoria was transferred, on or about May 17, 2012, from Virginia to the Shiloh Residential Treatment Center in Texas for a psychiatric evaluation, stabilization, and treatment.

The office notified Victoria that she was eligible for benefits, effective June 11, 2012, under its unaccompanied refugee minors program as a victim of trafficking.  See Pub. L. No. 110-457, 110th Cong., 2d Sess., Title II, Subtitle B, § 212, 122 Stat. 5044 (2008); Pub. L. No. 106-386, 106th Cong., 2d Sess., 114 Stat. 1464 (2000).  Victoria's mother sought reunification, but the office, on June 17, 2013, denied the release of Victoria to her mother's care after concluding that the mother was unable to provide the medical and mental health services, supervision, and structure necessary to care for Victoria's mental health needs.  On February 20, 2014, the office designated Victoria as an unaccompanied refugee minor, which entitles a State to Federal funds for providing child welfare services, and assigned Victoria for placement in Massachusetts.  See 45 C.F.R. §§ 400.110-400.120 (2012).  Victoria was transferred from Texas to Massachusetts on February 25, 2014, where she was released from Federal custody and placed

in the care of Lutheran Social Services of New England.
Lutheran Social Services of New England placed Victoria at the
Glenhaven Academy residential school, where she receives mental
health treatment,[6] daily living supervision, schooling, and
medical and dental care.

Approximately three weeks after Victoria's arrival in
Massachusetts, on March 14, 2014, the Department of Children and
Families (DCF) filed a petition for custody of Victoria in the
Probate and Family Court.  A judge granted temporary custody of
Victoria to DCF under the court's emergency child custody
jurisdiction.[7]  The judge noted that it was not clear whether
Massachusetts has child custody jurisdiction over Victoria, but
granted temporary custody after reasoning that the child needed
an authorized caretaker.  The judge accepted written argument
from the parties on the question of jurisdiction.  On June 30,
2014, he dismissed the petition for custody filed by DCF for
lack of child custody jurisdiction, but stayed the dismissal
pending resolution of the issue of jurisdiction, which he
reported as a question to the Appeals Court on July 1, 2014.

---

[6] Victoria is diagnosed with disruptive mood dysregulation
disorder and posttraumatic stress disorder.

[7] There is no evidence that any court, prior to action taken
by the Suffolk Division of the Probate and Family Court
Department, ever authorized the removal of the child from her
mother's custody or placed the child in State custody.

The appeal commenced by the reported question was dismissed by the Appeals Court for failure to docket the appeal as required by Mass. R. A. P. 10 (a), as amended, 430 Mass. 1605 (1999).[8]

After the appeal was dismissed by the Appeals Court, the judge reconsidered, sua sponte, his dismissal of DCF's petition. The judge reasoned that Massachusetts courts lacked child custody jurisdiction over Victoria under its statutes but that the case should proceed in Massachusetts because it is "an appropriate court" under Federal law to handle custody proceedings for Victoria. The judge cited 45 C.F.R. § 400.115(a) as applicable to States participating in the program for resettlement of unaccompanied refugee minors.[9] Consistent with the conclusion that jurisdiction existed under Federal law, the judge vacated his prior order dismissing the petition, restored custody of Victoria to DCF, and stayed further custody proceedings pending resolution of a new report

---

[8] Under Mass. R. A. P. 10 (a), as amended, 430 Mass. 1605 (1999), each appellant is required to pay a fee to docket the appeal within ten days after receiving notice of assembly of the record. The judge had designated both the Department of Children and Families (DCF) and the child as the aggrieved parties. The parties were notified of the assembly of record on July 3, 2014. Neither DCF nor the child docketed the appeal, and the case was dismissed on August 6, 2014.

[9] This regulation requires a State to "ensure that legal responsibility is established, including legal custody and/or guardianship . . . in accordance with applicable State law, for each unaccompanied minor who resettles in the State." 45 C.F.R. § 400.115(a) (2012).

on August 6, 2014, of the following questions to the Appeals

Court:

> "a.  Does a Massachusetts Probate and Family Court have child custody jurisdiction under G. L. c. 209B, or any other authority, of a minor child who has been granted refugee status by a Federal agency, has resided in another [S]tate for more than six months, but has been placed with a Massachusetts agency, in Massachusetts, for less than six months?
>
> "b.  If not, should the case proceed in the Massachusetts court despite lack of child custody jurisdiction because of the Federal statutory and regulatory scheme that brought the child to Massachusetts?"

We transferred the case from the Appeals Court on our own

motion.

Discussion.  1.  Statutory overview.  Because this case

presents an issue of statutory construction, we begin by

providing an overview of the Massachusetts act.  Enacted in

1983,[10] the act is a version of uniform standards developed in

1968 by the National Conference of Commissioners on Uniform

State Laws to provide consistency among the States for deciding

and enforcing custody jurisdiction, titled the Uniform Child

Custody Jurisdiction Act (uniform act), 9 U.L.A. §§ 1-28 (Master

ed. 1999).  St. 1983, c. 680.  See Redding v. Redding, 398 Mass.

102, 105 (1986).  See also Thompson v. Thompson, 484 U.S. 174,

---

[10] Massachusetts was the last of the fifty States to adopt a version of the Uniform Child Custody Jurisdiction Act. Blakesley, Child Custody -- Jurisdiction and Procedure, 35 Emory L.J. 291, 358 (1986).

181 (1988). Prior to the creation of uniform standards, States generally did not give full faith and credit to another State's custody orders. Id. at 180. This led to a "national epidemic of parental kidnaping" and jurisdictional deadlocks because "a parent who lost a custody battle in one State had an incentive to kidnap the child and move to another State to relitigate the issue." Id. at 180-181. The purposes of the Massachusetts and uniform acts are similar: both encourage cooperation and avoidance of jurisdictional conflict between courts of different States in order to protect a child's welfare when litigating custody matters. See St. 1983, c. 680, § 2 (a); 9 U.L.A. § 1(a). See also Redding, supra at 105.

Under Massachusetts law, a court may exercise jurisdiction in a custody proceeding only under the provisions of G. L. c. 209B. See Guardianship of Zeke, 422 Mass. 438, 441 (1996), quoting Redding, 398 Mass. at 106 ("The decision of a Massachusetts court to exercise jurisdiction and to make a custody determination must be based solely on G. L. c. 209B"). Section 2 (a) of the Massachusetts act confers child custody jurisdiction on Massachusetts courts only if one of the following four requirements are met:

> "(1) the [C]ommonwealth (i) is the home [S]tate of the child on the commencement of the custody proceeding, or (ii) had been the child's home [S]tate within six months before the date of the commencement of the proceeding and the child is absent from the [C]ommonwealth because of his

or her removal or retention by a person claiming his or her custody or for other reasons, and a parent or person acting as parent continues to reside in the [C]ommonwealth; or

"(2) it appears that no other [S]tate would have jurisdiction under paragraph (1) and it is in the best interest of the child that a court of the [C]ommonwealth assume jurisdiction because (i) the child and his or her parents, or the child and at least one contestant, have a significant connection with the [C]ommonwealth, and (ii) there is available in the [C]ommonwealth substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

"(3) the child is physically present in the [C]ommonwealth and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child from abuse or neglect or for other good cause shown, provided that in the event that jurisdictional prerequisites are not established pursuant to any other paragraph of this subsection and a court of another [S]tate shall be entitled to assert jurisdiction under any other subparagraph of this paragraph then a court exercising jurisdiction pursuant to this clause of paragraph (3) may do so only by entering such temporary order or orders as it deems necessary unless the court of the other [S]tate has declined to exercise jurisdiction, has stayed its proceedings or has otherwise deferred to the jurisdiction of a court of the [C]ommonwealth; or

"(4) (i) it appears that no other [S]tate would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another [S]tate has declined to exercise jurisdiction on the ground that the [C]ommonwealth is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that a court of the [C]ommonwealth assume jurisdiction."

G. L. c. 209B, § 2 (a).  Viewed broadly, the Massachusetts act grants jurisdiction where Massachusetts is the child's "home [S]tate," but also allows a Massachusetts court to exercise jurisdiction when, in the Legislature's judgment, it may be

appropriate to do so in the best interests of the child even though the Commonwealth is not the child's home State. We review each statutory basis for jurisdiction in turn.

a. "Home [S]tate" jurisdiction. Under paragraph (1), a court may exercise jurisdiction in a custody proceeding if (a) Massachusetts is the child's "home [S]tate";[11] and (b) a "parent or person acting as parent" continues to reside in Massachusetts. G. L. c. 209B, § 2 (a) (1). The "home [S]tate" is the State where the child "resided with his parents, a parent, or a person acting as parent, for at least [six] consecutive months" prior to the commencement of the custody proceedings.[12] G. L. c. 209B, § 1. Relevant to that definition, a "person acting as parent" is a "a person other than a parent who has physical custody of a child and who has either been

_____

[11] Consistent with the underlying purpose of G. L. c. 209B to allow for uniform treatment of custody issues by an appropriate court, the statute creates an exception to the residency requirement if Massachusetts would be the child's home State except that the child is absent from the State "because of his or her removal or retention" by a person claiming custody and a parent or a person acting as parent continues to reside in the Commonwealth. G. L. c. 209B, § 2 (a) (1). In these circumstances, the residency requirement is satisfied even though the child is absent from the Commonwealth. This clause is not applicable to the facts of this case.

[12] If a child is less than six months old, the timing requirement begins at birth. G. L. c. 209B, § 1. Further, "[p]eriods of temporary absence of any of the named persons are counted as part of the [six]-month or other period." Id. These provisions are not applicable to the facts of this case.

awarded custody of a child or claims a legal right to custody and includes an authorized social service agency exercising legal or physical custody of a child." Id. Thus, the "home [S]tate" analysis involves two components: (1) the timing of the child's residency in a State; and (2) whether the child resides in the State with a "parent or person acting as parent" during the requisite time period. G. L. c. 209B, § 1.

Although the timing component of the home State analysis is relatively straightforward, the component requiring residency with a parent or "person acting as parent" is more complex. The complexity arises from the definition of a "person acting as parent." The distinction between the Massachusetts act and the uniform act is relevant to the analysis. In contrast to the uniform act, which defines a "person acting as parent" as "a person, other than a parent, who has physical custody of a child and who has either been awarded custody by a court or claims a right to custody," the Massachusetts act expands this definition to include an "authorized social service agency exercising legal or physical custody of a child." Compare G. L. c. 209B, § 1, with 9 U.L.A. § 2(9). As the term "person" is undefined in either the uniform act or Massachusetts act, the language added by the Legislature clarifies that an authorized social service agency, such as DCF in Massachusetts, is a "person" under the

act.[13]  In summary, unless a residency exception applies,[14]

Massachusetts is the home State if the child has resided in the

Commonwealth for six months with either a parent or a "person

acting as parent," defined to include a social service agency

such as DCF.

b.  Default jurisdiction.  Paragraph (2) allows

Massachusetts courts to exercise jurisdiction over a custody

proceeding if "no other [S]tate would have jurisdiction under

paragraph (1)" and the best interest of the child would be

served by the court assuming jurisdiction of the matter.  G. L.

c. 209B, § 2 (a) (2).  Here, in contrast to the definition of

"best interest of the child" generally applied in child custody

litigation, the phrase as used in this context elevates the

---

[13] Many years after the Massachusetts Child Custody
Jurisdiction Act was enacted, in 1997, the uniform act was
revised and included a definition of "person," which accorded
legal status to government agencies and other entities that
might have a custodial relationship with the child.  Uniform
Child Custody Jurisdiction and Enforcement Act (revised uniform
act), 9 U.L.A. § 101 (Master ed. 1999).  Under the revised
uniform act, "person" is defined as "an individual, corporation,
business trust, estate, trust, partnership, limited liability
company, association, joint venture, government; governmental
subdivision, agency, or instrumentality; public corporation; or
any other legal or commercial entity."  Id. at § 102(12).  This
definition was added "to ensure that the provisions of this Act
apply when the State is the moving party in a custody proceeding
or has legal custody of a child."  Id. at § 102 comment.

[14] See note 11, supra.

value of the child's connections to the Commonwealth in the jurisdiction calculus. See id.

c. _Emergency jurisdiction_. Paragraph (3) establishes an option for emergency jurisdiction in certain limited circumstances. Under this provision, a Massachusetts court may exercise jurisdiction over custody if the child is physically in Massachusetts and has been abandoned or there is an emergency need to protect the child. G. L. c. 209B, § 2 (a) (3).

d. _Appropriate forum jurisdiction_. Paragraph (4) allows Massachusetts courts to exercise jurisdiction over custody if (i) no other State would have jurisdiction under any of the first three paragraphs or another State has "declined to exercise jurisdiction on the ground that the [C]ommonwealth is the more appropriate forum to determine the custody of the child," and (ii) it is in the "best interest of the child" for Massachusetts to assume jurisdiction. G. L. c. 209B, § 2 (a) (4).

2. _Jurisdiction over Victoria's custody_. With this background, we now review whether Massachusetts has jurisdiction over the child custody proceedings regarding Victoria under any of the four paragraphs in G. L. c. 209B, § 2 (a). We may quickly dispose of paragraphs (1) and (3). Massachusetts does not have jurisdiction under paragraph (1) because Massachusetts is not Victoria's home State. Victoria did not reside in

Massachusetts for six months prior to commencement of this custody proceeding; she resided in Texas at the Shiloh Residential Treatment Center from approximately May 17, 2012, to February 25, 2014, when she was transferred to Massachusetts. DCF commenced this custody proceeding three weeks after her arrival, on March 14, 2014. Massachusetts does not have jurisdiction under paragraph (3), which requires either that the child has been abandoned or that a party has established an emergency need to protect the child from abuse or neglect. Neither factual predicate applies in this case.

We now turn to paragraph (2), which allows Massachusetts to exercise jurisdiction if no other State qualifies as Victoria's home State under the definition provided in G. L. c. 209B, § 1, and the best interest of the child is served by the exercise of jurisdiction by a Massachusetts court. As explained below, both factors required for jurisdiction under this provision of the statute are satisfied in the circumstances of this case.

a. _Home State analysis_. We first consider whether Texas is the home State in accordance with the definition in G. L. c. 209B, § 1. See _MacDougall_ v. _Acres_, 427 Mass. 363, 366 (1998) (requiring application of Massachusetts law in

determining custody jurisdiction).  Texas law is not

applicable.[15]  See id.

Although it is undisputed that Texas satisfies the timing

component of the home State analysis, the second requirement,

that Victoria was in the custody of a "parent or person acting

as parent" while residing in Texas, is not met. The analysis

centers on whether a Federal agency such as the office is an

"authorized social service agency" that, under G. L. c. 209B,

§ 1, is recognized as a "parent or person acting as parent."

Resolution of the issue is a matter of statutory interpretation.

"A fundamental tenet of statutory interpretation is that

statutory language should be given effect consistent with its

---

[15] Although Texas law is not applicable to our analysis, we note that it is questionable whether Texas would be Victoria's home State under its laws.  Texas has adopted the revised uniform act, which defines "person acting as a parent" differently from the uniform act and from the Massachusetts act.  Compare Tex. Family Code Ann. § 152.102(13) (Thomson Reuters 2014) and revised uniform act, 9 U.L.A. § 102(13), with G. L. c. 209B, § 1, and uniform act, 9 U.L.A. § 2(9).  Under Texas law, a "person acting as a parent" means "a person, other than a parent, who:  (A) has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding; and (B) has been awarded legal custody by a court or claims a right to legal custody under the law of this [S]tate."  Tex. Family Code Ann. § 152.102(13).  The Commonwealth argues that the office is not a person acting as a parent under Texas law because it had not been awarded legal custody "under the law of this [S]tate," Texas, and instead had been awarded legal custody under Federal law.

plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." Sebago v. Boston Cab Dispatch, Inc., 471 Mass. 321, 339 (2015), quoting Sullivan v. Brookline, 435 Mass. 353, 360 (2001). "All the words of a statute are to be given their ordinary and usual meaning, and each clause or phrase is to be construed with reference to every other clause or phrase without giving undue emphasis to any one group of words, so that, if reasonably possible, all parts shall be construed as consistent with each other so as to form a harmonious enactment effectual to accomplish its manifest purpose." Worcester v. College Hill Props., LLC, 465 Mass. 134, 139 (2013), quoting Selectmen of Topsfield v. State Racing Comm'n, 324 Mass. 309, 312-313 (1949). In other words, we consider the specific language of a statute in connection with the statute as a whole and in consideration of the surrounding text, structure, and purpose of the Massachusetts act. College Hill Props., LLC, supra. See Rodman v. Rodman, 470 Mass. 539, 543 (2015).

The placement of the phrase, "authorized social service agency," in its statutory context is instructive. The phrase expands on the definition of "person acting as parent" and is relevant only in the analysis of jurisdiction based on a child's home State. G. L. c. 209B, §§ 1, 2 (a) (1). By granting to an "authorized social service agency" the same legal status as a

"person acting as parent," the Legislature recognized that a State social services agency with custody of a child provides the same connection as a parent or guardian residing in the State.  A State agency, such as DCF, with custody of and responsibility for a child's welfare exemplifies this kind of connection and is a basis the Legislature properly could consider for jurisdiction of a custody proceeding.  By linking "authorized social service agency" only to the "home [S]tate" analysis, the Legislature prioritized, for jurisdictional purposes, only those relationships between the State and social services agencies within its boundaries.  A Federal agency that merely assigns children to placement in various States does not provide the requisite connection to the State.  Thus, we conclude that the Legislature intended "authorized social service agency" to apply to State, but not Federal, agencies.

This interpretation of the reach of "authorized social service agency" is consistent with the overarching statutory purpose to grant jurisdiction to the State best able to protect a child's welfare when litigating custody matters.  St. 1983, c. 680, § 2 (a).  In that regard, the statute seeks to "avoid jurisdictional competition and conflict with courts of other [S]tates in matters of child custody."  St. 1983, c. 680, § 2 (a) (1).  While a State agency provides a direct nexus to that State's interest in overseeing custody of a child and the

child's interest in having his or her custody determined by that State, a Federal agency lacks that connection, leaving open the possibility that the jurisdictional conflicts that the statute seeks to avoid may occur.  By construing "authorized social service agency" to apply to State, but not Federal, agencies, we further the statutory purpose of avoiding jurisdictional conflict.  See College Hill Props., LLC, 465 Mass. at 139 ("all parts [of a statute] shall be construed as consistent with each other so as to form a harmonious enactment effectual to accomplish its manifest purpose").

Because the office, a Federal agency, is not an authorized social service agency as defined in G. L. c. 209, § 1, Texas is not Victoria's home State.  Based on this conclusion, Victoria does not have a home State.

b.  Best interest of the child.  If there is no home State, paragraph (2) grants jurisdiction to Massachusetts courts if it is in the child's best interest for the Commonwealth to assume jurisdiction because (i) she "and at least one contestant . . . have a significant connection with the [C]ommonwealth, and (ii) there is available in the [C]ommonwealth substantial evidence concerning the child's present or future care, protection, training, and personal relationships."  G. L. c. 209B, § 2 (a) (2).  "Contestant" is defined as "a person who claims a legal right to custody or visitation with respect to a child."

G. L. c. 209B, § 1.  These factors are met given the facts of this case.  Lutheran Social Services of New England is a contestant with a significant connection to the Commonwealth because it is a Massachusetts agency that was assigned custody of Victoria by the office.  Victoria has a significant connection with the Commonwealth because she has received mental health treatment and education in the Commonwealth since her arrival.  Last, there is substantial evidence concerning Victoria's present and future care in the Commonwealth because a review of her medical treatment was transferred with Victoria to Massachusetts and she receives mental health treatment, daily living supervision, schooling, and medical and dental care through her Lutheran Social Services placement.

Because we hold that Massachusetts has jurisdiction under paragraph (2), we do not review jurisdiction under paragraph (4) of G. L. c. 209B, § 2 (a).

Conclusion.  We conclude that because (a) Victoria has no home State as defined in G. L. c. 209B, § 1, and, (b) it is in Victoria's best interest for a Massachusetts court to exercise jurisdiction over the custody proceeding, Massachusetts has jurisdiction over the custody proceeding under G. L. c. 209B, § 2 (a) (2).  Accordingly, we answer "yes" to the first reported question.  No answer to the second reported question is

required.  We remand this case to the Probate and Family Court for further proceedings consistent with this opinion.

<u>So ordered</u>.