NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12113

ADOPTION OF YADIRA (and two companion cases).[1]


Suffolk.     November 7, 2016. - February 14, 2017.

Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, Lowy, &
Budd, JJ.


Adoption, Dispensing with parent's consent.  Minor, Adoption.
    Parent and Child, Adoption, Dispensing with parent's
    consent to adoption.  Regulation.  Practice, Civil,
    Adoption, Report.



Petitions filed in the Suffolk Division of the Probate and
Family Court Department on March 20, 2014.

A motion to deny the petitions was heard by Virginia M.
Ward, J.

The Supreme Judicial Court granted an application for
direct appellate review.


Jeanne M. Kaiser for the mother.
Brian Pariser for Department of Children and Families.
Nena S. Negron for Yadira & others.
Michael F. Kilkelly, for the father, was present but did
not argue.

---

[1] Adoption of Sabra; Adoption of Sabrina.

BUDD, J. We granted an application for direct appellate review in this case to determine whether the Code of Federal Regulations, 45 C.F.R. § 400.115(c) (1998), allows the Department of Children and Families (department) to petition for termination of parental rights on behalf of unaccompanied refugee minors whose parents also are present in the United States. We hold that the regulations do allow such petitions.

Background. In December, 2010, four minor siblings arrived in Massachusetts from a Nepalese refugee camp through the Federal Unaccompanied Refugee Minors Program (minor refugee program). See Custody of Victoria, 473 Mass. 64, 65 n.1 (2015). The department placed two of the children in a foster home in Fitchburg and the other two in a foster home in Ashby.[2] No later than April, 2013, the children's mother and father had entered the United States and settled in North Dakota and Ohio, respectively. Since coming to the United States, both the mother and the father have had "very limited contact" with the children.

In March, 2014, the department petitioned the Probate and Family Court to free the children for adoption by terminating

---

[2] The oldest child is now over the age of eighteen and is not a subject of this case.

parental rights pursuant to G. L. c. 210, § 3.[3]  The mother moved to deny the department's petition.  The judge denied the mother's motion and subsequently reported the matter to the Appeals Court.  In her report, the judge framed the following question for the court's consideration:

> "Is it permissible under the Code of Federal Regulations for the [department] to proceed to seek a termination of parental rights where the child(ren) are present in the United States pursuant to the [minor refugee program] and both parents are also believed to be present in the United States, i.e., not dead or missing and presumed dead?"[4]

Discussion.  a.  Federal regulation.  The Office of Refugee Resettlement (resettlement office), the Federal agency within the United States Department of Health and Human Services responsible for implementing the minor refugee program, has promulgated regulations pertaining to this program.  See Custody of Victoria, 473 Mass. at 65 n.1.  The regulation pertinent to this case, 45 C.F.R. § 400.115(c), provides:

_____

[3] According to the Probate and Family Court judge, the department has alleged facts in its petition that could "lead [that] Court to dispense with Mother and Father's consent to the adoption of each of the three minor children."

[4] "Although a judge may report specific questions of law in connection with an interlocutory finding or order, the basic issue to be reported is the correctness of [the] finding or order.  Reported questions need not be answered in this circumstance except to the extent that it is necessary to do so in resolving the basic issue."  Maher v. Retirement Bd. of Quincy, 452 Mass. 517, 522 n.9 (2008), cert. denied, 556 U.S. 1166 (2009), quoting McStowe v. Bornstein, 377 Mass. 804, 805 n.2 (1979).  See, e.g., Barnes v. Metropolitan Hous. Assistance Program, 425 Mass. 79, 83-84 (1997).

>    "Unaccompanied minors are not generally eligible for adoption since family reunification is the objective of the program.  In certain rare cases, adoption may be permitted pursuant to adoption laws in the State of resettlement, provided a court finds that:  (1) Adoption would be in the best interest of the child; and (2) there is termination of parental rights (for example, in situations where the parents are dead or are missing and presumed dead) as determined by the appropriate State court.  When adoption occurs, the child's status as an unaccompanied minor terminates."

The explicit purpose of the program is "family reunification." However, adoption of unaccompanied refugee minors is possible "in certain rare cases."

The parents argue[5] that the use in the regulation of the passive voice in the phrase "there is termination of parental rights . . . as determined by the appropriate State court" indicates that qualifying terminations must occur through nonjudicial means, such as parental death, and that the court is to determine only whether such termination occurred, not act to terminate rights itself.  They further argue that the use in the regulation of the present tense means that the department cannot petition for what would be a future termination; that is, the termination must already be in effect before the department can pursue adoption.

---

[5] Both parents submitted briefs; the father has adopted the mother's arguments seeking to dismiss the department's petition to terminate parental rights and makes an additional argument regarding the Federal Adoption and Safe Families Act of 1997 (adoption act), discussed infra.

This narrow reading of this regulation is unpersuasive. First, under this interpretation, there would be no need to use the phrase "for example," because, according to the parents, there are only two circumstances in which nonjudicial termination occurs: when parents are dead, or when they are missing and presumed dead. We conclude that the provision of examples indicates that there are more applicable situations than those listed. "[I]t is plain from the structure and language of the [regulation] that the [agency] did not intend to give an exhaustive list." Harrison v. Loyal Protective Life Ins. Co., 379 Mass. 212, 215 (1979).

Second, and more importantly, the parents' interpretation would mean that for unaccompanied refugee minors there would be no mechanism for a court ever to make a determination of parental unfitness and terminate parental rights. This would leave a whole category of children without protection and would be in direct conflict with the Federal Adoption and Safe Families Act of 1997, discussed infra. Such an interpretation is unreasonable, and "we will not adopt a construction of a statute that creates 'absurd or unreasonable' consequences" (citation omitted). Lowery v. Klemm, 446 Mass. 572, 578-579 (2006).

Because the termination of parental rights is a necessary precondition to adoption, the Federal regulation simply directs

the court to determine the issue of termination according to its own State laws.  Here the department seeks just such a determination with its petition.  See Adoption of Nancy, 443 Mass. 512, 515 (2005) ("the judge must determine whether the parent's unfitness is such that it would be in the child's best interests to end all legal relations between parent and child").

Our interpretation of this Federal regulation accords with the guidance statement on the adoption of unaccompanied refugee minors issued by the resettlement office, which advises that adoption cases involving such children "must be decided on their own merit, on a case-by-case basis, by local courts empowered to make such decisions based on State law and the best evidence available."  Office of Refugee Resettlement Statement of Goals, Priorities, Standards, and Guidelines, 52 Fed. Reg. 38147, 38148 (1987).  See Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) ("We must give substantial deference to an agency's interpretation of its own regulations").

b.  Massachusetts regulation.  The relevant State regulation, 110 Code Mass. Regs. § 1.12(3) (2008), regarding implementation of the minor refugee program, is in accord with 45 C.F.R. § 400.115(c),[6] and provides in relevant part:

---

[6] Federal regulations require the department to establish legal custody or guardianship for unaccompanied refugee minors who settle in the Commonwealth.  45 C.F.R. § 400.115(a) (1998).

> "The [d]epartment operates [a minor refugee program], which provides foster care and case management services to . . . refugee children who arrive in Massachusetts unaccompanied by a parent or immediate relative. In every case the parents of such children are either deceased or of parts unknown. The intent of this program is to reunite such children with a member or members of their family . . . . The [minor refugee program] is fully funded by the federal government through [resettlement office]. At present, a federal regulation requires that such children not be freed for adoption by the states. A proposed amendment to the federal regulation, to allow states to free such children for adoption awaits enactment. The [d]epartment will adhere to the federal regulation in question."

The department asserts that this regulation was promulgated in 1986. Notwithstanding the fact that it states, "[a]t present, a federal regulation requires that such children not be freed for adoption by the states," see id., as previously discussed, in our view 45 C.F.R. § 400.115(c) does give the department the discretion in rare instances to seek termination of parental rights on behalf of unaccompanied refugee minors so that they may be adopted.

The last sentence of the 110 Code Mass. Regs. § 1.12(3) is key: "The [d]epartment will adhere to the federal regulation in question." Thus, ultimately, the department's intention is to follow, and be in harmony with, the Federal regulation. Whether the department's interpretation of the Federal statute in 1986 was correct is moot.

---

See Custody of Victoria, 473 Mass. 64, 65 n.1 (2015), citing 8 U.S.C. § 1521.

c.  <u>Adoption and Safe Families Act of 1997</u>.  Despite the parents' argument to the contrary (and although they have different goals), the minor refugee program and the Adoption and Safe Families Act of 1997, Pub. L. No. 105-89, 105th Cong., 1st Sess., 111 Stat. 2115 (1997) (amending various provisions of title IV of Social Security Act, 42 U.S.C. §§ 601 et seq.) (adoption act), do not conflict.[7]

The purpose of the adoption act is to provide "safety, permanency, and . . . well-being" for children who are under State guardianship.  65 Fed. Reg. 4020, 4020 (2000).  It directs States to petition for the termination of parental rights where a child has been in foster care for fifteen of the prior twenty-two months.[8]  42 U.S.C. § 675(5)(E) (2012).  However, there are three exceptions to this general rule, including if there is a documented "compelling reason" to refrain from filing a

---

[7] The father also contends that the adoption act does not apply to unaccompanied refugee minors because the act has a funding source that is different from that of the Unaccompanied Refugee Minors Program (minor refugee program).  This argument has no merit; by its own terms, the adoption act applies to all children under State guardianship.  42 U.S.C. §§ 622(b)(8), 675(5) (2012).

[8] There is no question that children in the minor refugee program are included in the adoption act:  "Congress developed the [termination of parental rights] provision [of the adoption act] to be applied to all children in foster care, whatever their entry point into the system.  Exempting groups of children from the requirements would be contrary to [the adoption act's] goal to shorten children's time in foster care."  65 Fed. Reg. 4020, 4059 (2000).

petition. 42 U.S.C. § 675(5)(E)(ii). A compelling reason not to file a termination petition could include situations where the child is an unaccompanied refugee minor. See 45 C.F.R. § 1356.21(i)(2)(ii)(C) (2015). Thus, read together, the adoption act is well-aligned with regulations promulgating the minor refugee program.

3. <u>Conclusion</u>. Unaccompanied refugee minors are different from other children in foster care because they are separated from their parents by war, natural disaster, or other forces beyond their parents' control. Termination of parental rights in such circumstances would be a clear due process violation. However, although the overarching goal of the minor refugee program is the reunification of families so affected,[9] where parents of unaccompanied refugee minors arrive in the United

---

[9] In cases where the parents of refugee children remain overseas, the department must consider factors different from those in domestic cases when determining whether reasonable efforts were made to reunify the family and whether reunification is still reasonably possible.

In cases in which parents arrive in the United States after their children do, the resettlement office "expects that the overwhelming majority" of family reunifications can be achieved during a "90-day period during which [the resettlement office] would support services to unaccompanied minor refugees following arrival of a parent." Office of Refugee Resettlement Statement of Goals, Priorities, Standards, and Guidelines , 52 Fed. Reg. 38147, 38147 (1987). However, the resettlement office allows that "in a compelling case" the ninety-day period may be extended to allow more time for reunification. <u>Id</u>. at 38148. It is for the court with jurisdiction to determine whether the department exercised reasonable efforts to reunite the family in this case.

States but make no attempt to reunite with their children (or are otherwise found to be unfit), their children deserve safety and permanency just like any other child.

Accordingly, we affirm the judge's interlocutory order denying the mother's motion to deny the department's petition, and we remand the case to the Probate and Family Court for further proceedings consistent with this opinion.

<u>So ordered</u>.