NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-415

ADOPTION OF KALIL.[1]


MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The father appeals from a decree entered by a judge of the Juvenile Court terminating his parental rights to his child, Kalil.  He argues that (1) the court lacked subject matter jurisdiction, because Kalil and his mother allegedly had moved to North Carolina prior to when he was removed from his mother in Massachusetts, (2) the termination of his (father's) parental rights was in error because there was insufficient evidence to support the judge's determination that he was unfit, and (3) the judge erred in approving the department's proposed adoption plan.  We affirm.

Background.  We summarize the judge's findings of fact, supplemented with uncontroverted evidence from the record,

---

[1] A pseudonym.

reserving certain details for later discussion.  The mother was born in Massachusetts in 1997, and lived there until the age of seven, when she and her mother and siblings (family) moved to Georgia.  The mother and her family moved to North Carolina in 2011.

The mother met the father in North Carolina when she was approximately fourteen, and the father was approximately forty-five.  They began a relationship shortly after meeting and when the mother became pregnant with Kalil at age seventeen, her mother sent her to Boston to live with her grandmother.  The mother arrived in Boston, at the latest, in August of 2015.  She lived with her grandmother for several months, and then at a shelter for teen mothers (shelter).[2]  Kalil was born in January 2016, in Massachusetts.

In early March 2016, a report was filed pursuant to G. L. c. 119, § 51A (51A report), alleging that the mother was playing with Kalil, then only two months old, by throwing him up in the air, and holding him without proper neck support.  The Department of Children and Families (department) conducted an investigation pursuant to G. L. c. 119, § 51B (investigation).

---

[2] A report pursuant to G. L. c. 119, § 51A (51A report) was filed in August 2015, alleging that the mother, then seventeen, was being neglected by her mother and grandmother.  The department opened a case to provide services to the mother.

2

On March 15, the mother, along with her case manager and the shelter program coordinator, met with the department's investigator. The mother stated that she intended to begin parenting classes as quickly as possible and to make appointments to address her mental health needs. The mother also told the investigator that she had attended a Social Security Disability (SSI) evaluation that day in order to obtain additional services. The next day, the mother called the investigator to tell her that she was scheduled to begin parenting classes on March 21 and had scheduled an appointment on March 24 for mental health services at Boston Medical Center.[3] At the conclusion of the investigation, the allegations of neglect were supported and a case was opened for services.

On April 11, the shelter program coordinator told the department that the mother had been given a two-week termination notice due to multiple infractions, including failure to follow the program rules and leaving the program overnight without permission. The mother had been offered an alternative placement, but did not like the proposed placement, and instead asked if she could take Kalil to live in North Carolina.

---

[3] On March 28, the shelter's program coordinator confirmed that the mother had attended her appointment at Boston Medical Center.

At some point between the conclusion of the department's investigation on March 28, and April 11, the mother called the father to come pick her up because she was "on the verge of being kicked out" of the shelter. The mother testified that the father did so, and she and Kalil went with him to North Carolina for a weekend. The mother returned to Massachusetts and the shelter with Kalil "because [she] was still living in the shelter," and the trip to North Carolina had just been for the weekend.[4] She subsequently told the shelter that she "no longer needed to stay there" though she "wasn't leaving just then."

On April 12 the department contacted the mother, who reported that she planned to leave the shelter and move to North Carolina with Kalil. The mother was unable to articulate a plan for Kalil's care in North Carolina beyond her intention to rent a room from her mother's friend. The department removed Kalil

---

[4] The father testified that he picked the mother up from Massachusetts only after the child was removed by the department. For purposes of our analysis, we consider the mother's description of events, which is more favorable to the father because it involves the child traveling to North Carolina prior to any court action in Massachusetts. Under the father's conflicting version, he came to Massachusetts to get the mother after the department had removed the child.

We also note that the father's appellate brief states that the reason for the mother's return to Massachusetts was "only to retrieve her belongings." This contention overlooks the mother's testimony that she returned to the shelter because she was still living there.

4

that day and filed a care and protection petition (petition) the following day, April 13.  The mother was present at the initial custody hearing and waived her right to a temporary custody hearing.  The department was awarded temporary custody of Kalil and he was placed with kin in Waltham, who subsequently became Kalil's preadoptive parents.

The mother moved to North Carolina after the department's removal and petition.  She initially lived with the Father in Raleigh and then in an apartment on her own, also in Raleigh.  In May 2018, Kalil was reunified with the mother in North Carolina pursuant to the Interstate Compact on the Placement of Children (ICPC).  Two months later, in July, the mother moved to Georgia to live with her mother.  The department removed Kalil from the mother in Georgia in September 2018, following a 51A report alleging abuse and neglect of one of Kalil's siblings.  Kalil was then returned to Massachusetts and placed initially with a maternal aunt, and then back with kin in Waltham.

Discussion.  1.  Subject matter jurisdiction.  The father's first argument is that Massachusetts lacked jurisdiction over Kalil because (allegedly) the mother had moved with Kalil to North Carolina before the department had initiated custody proceedings in Massachusetts.  "In Massachusetts, jurisdiction over child custody proceedings possibly involving the

5

jurisdictional claims of other States is determined according to G. L. c. 209B," the Massachusetts Child Custody Jurisdiction Act (MCCJA).  Custody of Brandon, 407 Mass. 1, 5 (1990).  The MCCJA provides four bases by which a Massachusetts court can exercise jurisdiction over a child custody case, G. L. c. 209B, § 2(a), which have been referred to as "(1) Home State jurisdiction, (2) default jurisdiction, (3) emergency jurisdiction, and (4) appropriate forum jurisdiction."  Guardianship of Minor Children, 97 Mass. App. Ct. 316, 320 (2020).  The determination of subject matter jurisdiction is reviewed de novo.  See Adoption of Anisha, 89 Mass. App. Ct. 822, 828 (2016).  We conclude that the judge properly exercised jurisdiction pursuant to G. L. c. 209B, § 2 (a) (1), home state jurisdiction.

a.  Home state jurisdiction.  General Laws c. 209B confers jurisdiction to a competent Massachusetts court if Massachusetts is "the home state of the child on the commencement of the custody proceeding."  G. L. c. 209B, § 2 (a) (1).  For children less than six months of age, "home state" is defined as "the state in which the child lived from birth" with "his parents, a parent, or a person acting as a parent."  G. L. c. 209B, § 1.

Considering the facts outlined above, specifically that at the time of the filing of the petition, the mother had resided in Massachusetts for well over six months and Kalil was born in

Massachusetts and had lived here his entire life, Massachusetts was the child's home state.  We are unpersuaded by the father's attempt to characterize the mother's weekend trip to North Carolina as her moving to that State.  This issue was not raised in the trial court, so there are no specific findings on the issue, but the father's assertion is not borne out by the record.  The mother did not move to North Carolina; she went there briefly and then returned, with Kalil.  And in any event, under the facts here Massachusetts squarely fits the definition as Kalil's "home state."  The judge properly exercised jurisdiction pursuant to G. L. c. 209B, §§ 1 and 2 (a) (1).[5]

b.  Declination of jurisdiction.  The father next argues that, assuming Massachusetts could rightfully exercise jurisdiction, it should have declined to do so, because Massachusetts was an inconvenient forum.  As both Kalil and the department note in their briefs, the decision whether to decline jurisdiction pursuant to G. L. c. 209B, § 7 (a), is a discretionary one.  We address this argument, assuming without

---

[5] Because we conclude that Massachusetts was and is Kalil's home state, we need not address the other bases by which a Massachusetts court can claim jurisdiction under the MCCJA (default, emergency, or appropriate forum).  Nor do we address the father's contention that Massachusetts may have lost home state jurisdiction, as he offers no basis for this suggestion.

7

deciding that the father's arguments on this issue were properly preserved.

Though a Massachusetts court has jurisdiction pursuant to G. L. c. 209B, § 2 (a), that court may decline jurisdiction where Massachusetts constitutes an inconvenient forum and another state would constitute a more convenient forum.  See G. L. c. 209B, § 7 (a); Guardianship of a Minor, 98 Mass. App. Ct. 133, 138 (2020) (even if court has power to exercise jurisdiction, it may still decline to do so pursuant to G. L. c. 209B, § 7 [a]).  The relevant factors a court may consider in determining whether to decline jurisdiction in favor of a more appropriate forum include

> "(1) whether another state is or recently was the child's home state; (2) whether another state has a closer connection with the child and his family or with the child and one or more of the contestants; [and] (3) whether more substantial evidence concerning the child's present or future care, protection, training, and personal relationships is available or whether such evidence is more readily available in another state."

G. L. c. 209B, § 7 (d) (1)-(3).

Here, no other state is or recently was the child's home state.[6]  And, although North Carolina may claim a "closer

---

[6] We note that neither Kalil's two-month stay in North Carolina or three-month stay in Georgia was of sufficient duration to establish either of those states as his home state. Both States require a six-month residency duration within the State to be considered the home state.  See N.C. Gen. Stat. § 50A-102(7); Ga. Code. Ann. § 19-9-41(7).

connection" with Kalil's parents, there is no such connection to Kalil.  Massachusetts, moreover, claims a connection to both Kalil and a contestant.[7]  In terms of the location of evidence, there are records and witnesses relating to Kalil's present care, present and future protection, and relationship with his preadoptive family that are present in Massachusetts.  Thus, while it is true that certain evidence, particularly as to the parents, is available in North Carolina, there is substantial evidence in Massachusetts.  We therefore do not think it can be said that substantial evidence is more readily available in North Carolina.  We conclude that there was no abuse of discretion or other error of law in the judge continuing to exercise jurisdiction.

2.  Sufficiency of the evidence.  The father next argues, rather summarily, that the judge's finding of unfitness is unsupported by clear and convincing evidence of grievous shortcomings.  Contrary to the father's assertion, the record is replete with such evidence.  The father is fifty-seven years old, and has nineteen children with eleven different women. Fourteen of those children are older than Kalil.  The evidence

---

[7] The department is a contestant as defined by G. L. c. 209B, § 1, as the department is a Massachusetts agency assigned custody of the child.  See Custody of Victoria, 473 Mass. 64, 74-75 (2015).

9

showed that the father has been involved with child protective services in five States; has a significant history of domestic violence and physical discipline of his children; has pointed a loaded gun at one of his older children; fails to appreciate the nature and severity of the mother's mental illness; and lacks understanding of Kalil's needs and his [the father's] ability to provide for those needs.[8]  Further, there is nothing in the record to indicate that the father spent any substantial time parenting Kalil, or indeed, any of his children.[9]  The uncontested record before us clearly and convincingly supports the judge's determination that the father is unfit, and that his unfitness is likely to continue into the future to a near certitude.

3.  Permanency plan.  Lastly, the father argues that the judge failed to address certain troublesome facts relative to the department's proposed permanency plan.  Specifically, the

_____

[8] We note that the father does not challenge any of the judge's subsidiary findings as clearly erroneous.  See Adoption of Greta, 431 Mass. 577, 587 (2000) (judge's findings of fact will not be set aside unless clearly erroneous).

[9] Rather, the record shows that the father sent one of the parents' younger children away to live with the father's ex-girlfriend for two years;  at most, Kalil had lived with the father for only two months; and that it was the mother who was the primary caretaker for their children, and when she was overwhelmed with their care, rather than turn to the father for help, she moved to Georgia to seek assistance from her mother.

10

father argues that the judge did not carefully evaluate the suitability of the department's proposed adoption plan because the judge's findings do not address allegations of sexual abuse and inappropriate conduct by Kalil's preadoptive parents. Those allegations were the subject of a 51A report, which the department investigated, and which were unsupported at the conclusion of the investigation.

The father's argument on this point amounts to no more than dissatisfaction with the judge's weighing of the evidence, which, along with the judge's assessment of "the credibility of the witnesses[,] is entitled to deference." Custody of Eleanor, 414 Mass. 795, 799 (1993). Here, the judge made specific findings relative to Kalil and his preadoptive parents, particularly noting that the department did not have any concerns with Kalil's care or the preadoptive parents' ability

to provide "a loving and nurturing home and the consistent care" he needs.  There was no error or abuse of discretion.

Decrees affirmed.

By the Court (Massing, Englander & D'Angelo, JJ.[10]),

*Paul Little*

Clerk

Entered:  August 5, 2025.

---

[10] The panelists are listed in order of seniority.