### JOHN MacDOUGALL *vs.* PATRICIA ACRES.

Suffolk. January 5, 1998. - April 30, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, FRIED, MARSHALL, & IRELAND, JJ.

*Child Custody Jurisdiction Act. Parental Kidnapping Prevention Act. Jurisdiction,* Probate Court, Custody of child. *Probate Court,* Jurisdiction. *Divorce and Separation,* Child custody.

A judge of the Probate and Family Court was without authority to exercise jurisdiction under G. L. c. 209B, § 2 (*a*) (1), (2), or (4), the Massachusetts Child Custody Jurisdiction Act, over a mother's complaint for modification of a child custody order, where Massachusetts was not the "home state" of the child, and where Louisiana appeared to have "home state" jurisdiction and had not declined to exercise it [366-369]; however, where the child is physically present in Massachusetts, the Probate Court judge has limited emergency jurisdiction under G. L. c. 209B, § 2 (*a*) (3) (ii), to enter a temporary order granting the mother custody until a court in Louisiana issues a custody order, in circumstances in which there was evidence that the child was at risk of abuse in her father's home in Louisiana [369-371].

CIVIL ACTION filed in the Supreme Judicial Court for the county of Suffolk on February 24, 1997.

The case was heard by *Greaney*, J.

*Earl D. Munroe* for the defendant.

*George P. Lordan, Jr.*, for the plaintiff.

IRELAND, J. This case involves an interstate custody dispute between parents of a child named Jessica. The issue on appeal is whether the Probate and Family Court (Massachusetts court) has subject matter jurisdiction over the mother's complaint for modification of custody. The child's father sought to have the mother's complaint for modification dismissed in the Massachusetts court, claiming that the court lacked subject matter jurisdiction. His motion to dismiss was denied. A single justice of this court subsequently issued an order denying the father's complaint for relief pursuant to G. L. c. 211, § 3. He appeals from that order.

We summarize the facts as follows. Jessica's parents were

divorced by an order of the Massachusetts court in July, 1989. The parties were awarded joint legal custody of their two children.[1] An agreement between the parties gave Jessica's father, John MacDougall (John), sole physical custody of the children. At some point John decided to move to Louisiana, and in June, 1993, John's attorney prepared an agreement that would allow John to remove the children permanently to Louisiana. The agreement provided in part that, "[t]he Essex County Probate and Family Court shall retain jurisdiction over [the children]," and that "Massachusetts law will govern." Jessica's mother, Patricia Acres (Patricia), signed the agreement on June 15, 1993. This agreement was incorporated and merged in a modified order issued that same day.

Jessica lived with her father and stepmother in Louisiana from that time until December, 1996, when she traveled to Massachusetts to visit her mother. During her visit, Jessica told her mother of a number of instances when her stepmother had abused her. As a result, Patricia filed a complaint with the Massachusetts court seeking an emergency temporary order of custody as well as permanent custody of Jessica. As changed circumstances, Patricia alleged that Jessica now wanted to live with her mother, that she was being physically abused in her home in Louisiana, and that she was now "failing in school." Patricia also claimed that John was no longer a fit parent because he allowed Jessica to be abused by his new wife and that she, Patricia, would be better able to provide for the primary care of her daughter.

John filed a motion to dismiss the complaint claiming that the Massachusetts court lacked subject matter jurisdiction because Louisiana was Jessica's "home state" under both the Massachusetts Child Custody Jurisdiction Act (MCCJA) (G. L. c. 209B), and the Federal Parental Kidnapping Prevention Act (PKPA) (28 U.S.C. § 1738A [1994]). Patricia argued that Massachusetts had the power to issue the temporary order under the continuing jurisdiction provision of the PKPA, because she has been a resident of Massachusetts since the court issued the original order. See 28 U.S.C. § 1738A(d).[2] She claimed that the PKPA preempted contrary provisions of the MCCJA, and

---

[1]The status of the other child is not involved in these proceedings.

[2]Title 28 U.S.C. § 1738A(d) (1994) provides in relevant part: "The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as [such

that G. L. c. 223A, § 3 (*h*), conferred jurisdiction on Massachusetts courts consistent with the PKPA. She also argued that, in any event, § 2 (*a*) (3) of the MCCJA conferred jurisdiction on the Massachusetts court to issue emergency custody orders. The judge denied John's motion on December 27, 1996, and entered an order of temporary custody to be reviewed on June 9, 1997.

John subsequently filed an action in Louisiana seeking custody of Jessica. The Tenth Judicial District Court in Louisiana (Louisiana court) entered an ex parte temporary order awarding custody to John and ordering Patricia to appear and show cause why permanent custody should not be awarded to John. On February 18, 1997, the Louisiana court decided not to take further action until Massachusetts determined whether it had jurisdiction.[3]

John sought interlocutory review before a single justice of the Appeals Court pursuant to G. L. c. 231, § 118, first par., from the Probate Court judge's denial of his motion to dismiss. The single justice denied John's petition based on Patricia's argument that the PKPA preempted the MCCJA, and that the Massachusetts long-arm statute (G. L. c. 223A, § 3 [*h*]) conferred jurisdiction on the Massachusetts courts. John next sought relief under G. L. c. 211, § 3, from a single justice of this court, which was denied. In his memorandum and order, the single justice characterized Massachusetts as the primary State involved in the divorce and custody proceedings and found, "[m]ost importantly, [that] the Louisiana judge has ceded jurisdiction to Massachusetts." Accordingly, he concluded that the requirements of the PKPA were not violated.

Next, John submitted a letter from a judge on the Louisiana court stating that Louisiana had not declined jurisdiction, but rather had deferred or continued the hearing pending a ruling by the Massachusetts Supreme Judicial Court, and moved for reconsideration, a rehearing, and to vacate the order of the single justice. His motion was denied on April 8, 1997, without a hearing. He then appealed from that ruling to the full bench of

court has jurisdiction under the law of such State,] and such State remains the residence of the child or of any contestant."

[3]As recommended under the MCCJA, the judge from Massachusetts spoke with the judge from Louisiana to discuss what should happen next. The judge from Louisiana said he would continue the proceeding there until the Massachusetts Supreme Judicial Court ruled on the jurisdiction issue.

this court. Review of the temporary order, scheduled for June, 1997, was continued pending this appeal.

The Federal PKPA requires "the appropriate authorities of every State [to] enforce according to its terms, and [without modification], any child custody determination made consistently with the provisions of this section by a court of another State." 28 U.S.C. § 1738A(a). See *Delk* v. *Gonzalez*, 421 Mass. 525, 532 (1995). The PKPA was adopted, among other reasons,[4] to prevent competition and conflict between State courts in child custody disputes. See *Archambault* v. *Archambault*, 407 Mass. 559, 569 & n.3 (1990).

Under the PKPA, a State that issues an original custody order consistent with the provisions of the PKPA will have continuing jurisdiction if one party still resides in the State, and if the State continues to have jurisdiction over the matter under its own laws. See 28 U.S.C. § 1738A. In this case, the first requirement for continuing jurisdiction is satisfied because Patricia has continued to reside in Massachusetts since the modified custody order was issued in June, 1993. Now we must determine whether Massachusetts has subject matter jurisdiction over this custody proceeding under its own law.

A Massachusetts court's exercise of jurisdiction over custody determinations must be based solely on the MCCJA, G. L. c. 209B. See *Guardianship of Zeke*, 422 Mass. 438, 441 (1996); *Custody of Brandon*, 407 Mass. 1, 6 (1990); *Redding* v. *Redding*, 398 Mass. 102, 106 (1986). "Jurisdiction must be exercised pursuant to any of the four subsections of G. L. c. 209B, § 2 (*a*)." *Guardianship of Zeke, supra* at 441; *Custody of*

---

[4]Congress set out six general purposes for enacting the PKPA. They are "[t]o (1) 'promote cooperation between State courts to the end that a determination of custody and visitation is rendered in the State which can best decide the case in the interest of the child; (2) promote and expand the exchange of information and other forms of mutual assistance between States which are concerned with the same child; (3) facilitate the enforcement of custody and visitation decrees of sister States; (4) discourage continuing interstate controversies over child custody in the interest of greater stability of home environment and of secure family relationships with the child . . . [5] avoid jurisdictional competition and conflict between State courts in matters of child custody and visitation which have in the past resulted in the shifting of children from State to State with harmful effects on their well-being; and' [6] 'deter interstate abductions and other unilateral removals of children undertaken to obtain custody and visitation awards.' " *Archambault* v. *Archambault*, 407 Mass. 559, 568-569 & n.3 (1990), quoting Pub. L. 96-611, § 7(c), 94 Stat. 3569 (1980).

*Brandon, supra* at 9. General Laws c. 209B, § 2 (*a*), provides that a Massachusetts court has jurisdiction to make a custody determination by initial or modification judgment only if one of the following applies:

"(1) the commonwealth (i) is the home state of the child on the commencement of the custody proceeding, or (ii) had been the child's home state within six months before the date of the commencement of the proceeding and the child is absent from the commonwealth because of his or her removal or retention by a person claiming his or her custody or for other reasons, and a parent or person acting as parent continues to reside in the commonwealth; or

"(2) it appears that no other state would have jurisdiction under paragraph (1) and it is in the best interest of the child that a court of the commonwealth assume jurisdiction because (i) the child and his or her parents, or the child and at least one contestant, have a significant connection with the commonwealth, and (ii) there is available in the commonwealth substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

"(3) the child is physically present in the commonwealth and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child from abuse or neglect or for other good cause shown, provided that in the event that jurisdictional prerequisites are not established pursuant to any other paragraph of this subsection and a court of another state shall be entitled to assert jurisdiction under any other subparagraph of this paragraph then a court exercising jurisdiction pursuant to this clause of paragraph (3) may do so only by entering such temporary order or orders as it deems necessary unless the court of the other state has declined to exercise jurisdiction, has stayed its proceedings or has otherwise deferred to the jurisdiction of a court of the commonwealth; or

"(4) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that the commonwealth

is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that a court of the commonwealth assume jurisdiction."

1. *"Home state" jurisdiction.* "The first basis for jurisdiction under § 2 of the MCCJA is as the 'home state' of the children 'on the commencement of the custody proceeding.' " *Umina* v. *Malbica*, 27 Mass. App. Ct. 351, 357 (1989), citing § 2 (*a*) (1). See *Custody of Brandon, supra* at 6. "Home state" is defined as:

> "the state in which the child immediately preceding the date of commencement of the custody proceeding resided with his parents, a parent, or a person acting as parent, for at least 6 consecutive months . . . . Periods of temporary absence of any of the named persons are counted as part of the 6-month or other period."

G. L. c. 209B, § 1. In this case, Jessica had resided with her father in Louisiana for more than forty consecutive months. She had been in Massachusetts with her mother for less than one month before the complaint for modification was filed. Therefore, Massachusetts was not Jessica's "home state" on the date of the filing of the complaint for modification, and it cannot assert jurisdiction under § 2 (*a*) (1).[5]

2. *Default jurisdiction.* If it appears that no other State would have "home state" jurisdiction, see *Umina, supra* at 358 & n.7, then Massachusetts may exercise jurisdiction, as long as it is in the child's best interest, there is a significant connection between the child or parents to Massachusetts, and there is substantial evidence available in Massachusetts concerning the matter. See G. L. c. 209B, § 2 (*a*) (2). Here, it appears that Louisiana would have "home state" jurisdiction.[6] Indeed, the Louisiana court issued a temporary order giving John physical custody of Jessica.

[5]Section 2 (*a*) (1) (ii) establishes an alternate basis for "home state" jurisdiction if a State had been the child's "home state" within six months before the date of the commencement of the proceedings, but the child had been removed "by a person claiming his or her custody or for other reasons." This language does not apply to the facts of this case.

[6]Although the MCCJA cannot confer jurisdiction on another State, most States adopted versions of the Uniform Child Custody Jurisdiction Act (UCCJA), which gives them "home state" jurisdiction. See 9 (Part I) U.L.A. 123 (Master ed. 1988). If it appears that another State may have "home state" jurisdiction, and it does not, other provisions of the MCCJA allow Massachusetts to exercise jurisdiction if it is appropriate. See G. L. c. 209B, § 2 (*a*).

Accordingly, there is no basis for Massachusetts to exercise jurisdiction under § 2 (*a*) (2). See *Guardianship of Zeke, supra* at 442; *Umina, supra* at 357.

3. *Appropriate forum jurisdiction.* Massachusetts has the authority to exercise jurisdiction over a custody proceeding if "(i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to exercise jurisdiction . . . and (ii) it is in the best interest of the child that a court of the commonwealth assume jurisdiction." G. L. c. 209B, § 2 (*a*) (4). See *Redding, supra* at 105-106. Here, Louisiana would appear to have "home state" jurisdiction which it did not decline to exercise.[7] Therefore, the Massachusetts court cannot exercise appropriate forum jurisdiction under G. L. c. 209B, § 2 (*a*) (4).

4. *Emergency jurisdiction.* Under § 2 (*a*) (3), Massachusetts courts have jurisdiction to make custody determinations when a child is physically present and either has "(i) . . . been abandoned or (ii) it is necessary in an emergency to protect the child from abuse or neglect or for other good cause shown." However, when another State has jurisdiction, the emergency jurisdiction of Massachusetts courts is limited to issuing temporary orders designed to effectuate the other State's exercise of jurisdiction, yet keep the child safe. See G. L. c. 209B, § 2 (*a*) (3); *Umina, supra* at 359. Because there was no evidence in this case that Jessica had been abandoned by her father, § 2 (*a*) (3) (i) does not apply. However, there was evidence from which the judge could have found that she was at risk of abuse in her father's home in Louisiana. Therefore we shall examine the extent of the Massachusetts court's emergency jurisdiction under § 2 (*a*) (3) (ii).

The facts of this case are similar to those presented in *Umina, supra.* In that case, the parents were divorced in Massachusetts, the mother took the children to Colorado, and the father continued to reside in Massachusetts. After residing in Colorado for approximately fifteen months, the children came to visit their father in Massachusetts. During this visit, accounts of abuse and neglect by their mother emerged, and the father sought a modification of the custody order in Massachusetts. *Id.* at 352-353. The Massachusetts judge determined that he did not have jurisdiction under G. L. c. 209B, but because there was

---

[7]There is a letter contained in the record from the Louisiana judge stating that Louisiana "[a]t no time . . . declined jurisdiction in this case."

evidence that the children were at risk of abuse with their mother in Colorado, he entered a temporary order granting the father temporary custody pursuant to § 2 (*a*) (3) (ii). The Appeals Court concluded that the judge was correct that he was without jurisdiction under § 2 of the MCCJA, and that he "properly limited the proceedings to measures designed to effectuate Colorado's exercise of jurisdiction, yet to keep the children in their father's care until the Colorado court might order otherwise." *Id.* at 360. See G. L. c. 209B, § 2 (*a*) (3) (ii).

As in *Umina, supra* at 359, the Massachusetts court had jurisdiction to enter a temporary order granting Patricia custody of Jessica, because there was evidence from which the judge could conclude that Jessica was at risk of abuse in Louisiana. See G. L. c. 209B, § 2 (*a*) (3) (ii). However, § 2 (*a*) (3) of the MCCJA limits the Massachusetts court's authority as follows:

> "[if] a court of another state shall be entitled to assert jurisdiction under any other subparagraph of this paragraph then a court exercising jurisdiction pursuant to this clause of paragraph (3) may do so only by entering such temporary order or orders as it deems necessary unless the court of the other state has declined to exercise jurisdiction, has stayed its proceedings or has otherwise deferred to the jurisdiction of a court of the commonwealth."

Here, Louisiana is entitled to assert "home state" jurisdiction under § 2 (*a*) (1). In addition, Louisiana explicitly stated that it has not declined to exercise jurisdiction in a letter which John submitted to this court. Accordingly, under its own laws, Massachusetts only has the authority to enter temporary orders "as it deems necessary."

The PKPA requires States to give full faith and credit to child custody determinations made by other State courts as long as the other State is exercising jurisdiction consistently with the provisions of 28 U.S.C. § 1738A. Massachusetts continuing jurisdiction in this case is predicated on its having jurisdiction under its own laws. Because Massachusetts laws limit its authority to entering temporary orders as it deems necessary, any order that goes beyond that is not consistent with the PKPA, and is therefore precluded by the PKPA. See generally *Delk, supra* at 531; *Archambault, supra* at 567, quoting *Hisquierdo* v. *Hisquierdo,* 439 U.S. 572, 583 (1979). Therefore, once the

Louisiana court issues a custody order, Massachusetts is required to give that order full faith and credit pursuant to the PKPA. See 28 U.S.C. § 1738A.

5. *Jurisdiction agreement.* In June, 1993, John's attorney prepared an agreement that would allow John to remove the children permanently from Massachusetts to Louisiana. One term of the agreement provided that the Massachusetts court would retain jurisdiction over the children and that Massachusetts law should govern. Patricia and John signed the agreement, and it was incorporated in a modified judgment. How much Patricia relied on this provision when she agreed to permit John to remove the children from Massachusetts is unclear. However, it is well-settled law that "[s]ubject matter jurisdiction cannot be conferred by consent, conduct or waiver." *Litton Business Sys., Inc.* v. *Commissioner of Revenue*, 383 Mass. 619, 622 (1981), citing *Second Bank-State St. Trust Co.* v. *Linsley*, 341 Mass. 113, 116 (1960). Massachusetts, therefore, has no subject matter jurisdiction based on this agreement.

6. *Conclusion.* At the time the complaint for modification was filed, the Massachusetts court had emergency jurisdiction under G. L. c. 209B, § 2 (*a*) (3) (ii), to issue temporary orders designed to effectuate Louisiana's jurisdiction but keep Jessica in her mother's care until the Louisiana court ordered otherwise. See *Umina, supra* at 359. The case is remanded to a single justice of this court, where an order is to be entered stating that any temporary custody order will be valid only as long as the emergency lasts and until the Louisiana court acts on the question of permanent custody.

*So ordered.*