NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

19-P-296                                        Appeals Court

GUARDIANSHIP OF MINOR CHILDREN.


No. 19-P-296.

Essex.      February 3, 2020. - April 13, 2020.

Present:  Green, C.J., Wolohojian, & Sullivan, JJ.


Probate Court, Guardian, Jurisdiction.  Jurisdiction, Probate
     Court.  Practice, Civil, Guardianship proceeding,
     Dismissal.



     Petitions for appointment of guardians filed in the Essex Division of the Probate and Family Court Department on December 3, 2013.

     Motions to dismiss petitions for removal of guardians, filed on February 13, 2018, were heard by Jennifer M.R. Ulwick, J.

     Robert E. Curtis, Jr., for the father.
     Erin Whelan Pennock for the guardians.
     John P. Dennis for the children.


     WOLOHOJIAN, J.  At issue is whether the Essex Division of

the Probate and Family Court Department (probate court), having

appointed permanent guardians over three minor children, had

exclusive continuing "home state" jurisdiction over the

petitions to remove those guardians and, if not, whether the probate judge abused her discretion in declining to exercise jurisdiction in favor of California, where the children and the guardians have lived for several years. We conclude that the probate court did not have home State jurisdiction over the termination petitions; nor did it have jurisdiction under any of the other provisions of G. L. c. 209, § 2. We accordingly affirm the dismissal of the termination petitions without reaching the question whether the judge acted within her discretion when she declined jurisdiction on forum non conveniens grounds.

Background. In 2013, Steven and Maria Fitzgerald (Fitzgeralds), long-time residents of California, filed a petition with the probate court seeking to be appointed guardians of the three minor children.[1] The children were already under the guardianship of Jeanette Maria Fitzgerald (Jeanette),[2] who was Steven's mother. But because of her advancing age, Jeanette, who was the children's great-grandmother, wished to move to California to live with the Fitzgeralds and to have them assume guardianship of the

---

[1] Separate appointment and removal petitions were filed for each child. But for ease, we refer to each type of petition as a single petition in the background and discussion sections of this opinion.

[2] We use the name that appears on the petitions.

children.  This arrangement was agreed to by the children's mother, who was at that time not able to care for the children. These parties entered into an agreement to have the Fitzgeralds become the permanent guardians of the children, to permit the children to move to California to live with the Fitzgeralds, and to transfer jurisdiction to Los Angeles County.  The terms of this agreement were incorporated into the guardianship decree, which entered on December 3, 2013.[3]  The father, who was incarcerated, did not appear in the guardianship proceeding, nor was he a party to the agreement.

As planned, the children moved to California, where they have lived with the Fitzgeralds continuously since the beginning of 2014.  Despite the fact that the parties had agreed that jurisdiction would transfer to Los Angeles County, the Fitzgeralds never registered the guardianship decree with the California courts.[4]  They also recognized the probate court's continuing interest in the guardianship by complying with the requirement that they file annual reports on the status and progress of the children.

---

[3] Separate decrees were entered for each child.  But for ease, we refer to them collectively as a single decree in the background and discussion sections of this opinion.

[4] We do not mean to suggest that registration was required, which is a matter that has not been briefed.

The father was released from incarceration in August 2017. Approximately six months later, on February 13, 2018, the father, contending that he was gainfully employed, had managed to put his troubles behind him, and was now fit to parent the children, filed a petition, pursuant to G. L. c. 190B, § 5-212, to remove the Fitzgeralds as guardians of the children and to assume custody of the children. The father also contended that the 2013 guardianship decree was void for lack of service. At the time of the termination petition, the father lived in Burlington and the mother lived in Connecticut.[5]

The Fitzgeralds responded to the petition in two ways. First, they filed papers in a California court seeking to register the guardianship decree.[6] Second, they moved in the probate court to dismiss the father's termination petition on jurisdictional grounds. The Fitzgeralds noted that they have lived in California since 1994 and are gainfully employed there. They represented that they have substantial evidence regarding

---

[5] We have taken the mother's residence from the address on the affidavit of service.

[6] The father asks that we take judicial notice of the fact that the California Superior Court in Los Angeles County denied the registration without prejudice to its refiling in the Probate Division. This information was not available at the time the judge ruled on the Fitzgeralds' motion to dismiss the termination petition. Even taking it into account, however, it would not affect the jurisdictional analysis, except as we note in note 9, infra.

the children's care, protection, training, and personal relationships in California.  The Fitzgeralds further noted that it was likely a guardian ad litem would need to be appointed in order to help determine the best interest of the children, and that California would be a more convenient forum.  The Fitzgeralds' motion to dismiss was accompanied by an affidavit from a California attorney explaining certain provisions of California's Family Code and opining that the Los Angeles County Superior Court would likely accept jurisdiction over the guardianship termination proceeding were jurisdiction declined by the probate court.  The Fitzgeralds also averred that the father had been served by various means, including by service on the correctional facility at which he was then housed, with the original guardianship petition, and that he had received notice of the guardianship proceedings.

After a hearing, the probate judge allowed the motion to dismiss on alternative grounds.  First, the judge concluded that she did not have jurisdiction over the termination petition because Massachusetts was neither the home State of the children on the date the termination petition was filed, nor had it been the children's home State during the previous six months.  G. L. c. 209B, § 2 (a) (1).  Second, in the alternative, the judge concluded that, even if the probate court had jurisdiction, she would decline to exercise it in favor of California as the more

convenient forum. G. L. c. 209B, § 7 (a), (b). It is clear from the transcript of the hearing that the judge was particularly concerned about the fact that important witnesses, such as the children's teachers, therapists, and doctors, were located in California and could not be compelled to come to Massachusetts. In the judge's view, the inability to obtain such important information bearing on the children's best interest made Massachusetts a less convenient forum than California. Finally, the judge concluded that the father could not collaterally attack the validity of the guardianship decree by way of a petition to remove the guardians. Rather, the father's argument that the guardianship decree was void for lack of service should have instead been raised via a motion pursuant to Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974) (rule 60 [b]). To preserve the father's ability to pursue that avenue of relief, the judge's dismissal of the petition was without prejudice to the father's ability to file a rule 60 (b) motion.

Discussion. On appeal, the father challenges the dismissal of the termination petition on two grounds. First, he contends that as the probate court entered the guardianship decree, it retained exclusive continuing home State jurisdiction over all matters thereafter pertaining to the guardianship, including its termination. In connection with this argument, he points to the continuing status of the guardianship, the filing of annual

status reports in Massachusetts, and the fact that the Fitzgeralds never registered the guardianship in California. Second, the father contends that the guardianship decree was void for lack of service. We address each of these arguments in turn.

"A Massachusetts court's exercise of jurisdiction over custody determinations must be based solely on the [Massachusetts Child Custody Jurisdiction Act (MCCJA)], G. L. c. 209B." MacDougall v. Acres, 427 Mass. 363, 366 (1998). See Redding v. Redding, 398 Mass. 102, 106 (1986). This means that "[j]urisdiction must be exercised pursuant to any of the four subsections of G. L. c. 209B, § 2 (a)." Guardianship of Zeke, 422 Mass. 438, 441 (1996). Those four subsections provide that "[a]ny court which is competent to decide child custody matters has jurisdiction to make a custody determination by initial or modification judgment if:

> "(1) the commonwealth (i) is the home state of the child on the commencement of the custody proceeding, or (ii) had been the child's home state within six months before the date of the commencement of the proceeding and the child is absent from the commonwealth because of his or her removal or retention by a person claiming his or her custody or for other reasons, and a parent or person acting as parent continues to reside in the commonwealth; or

> "(2) it appears that no other state would have jurisdiction under paragraph (1) and it is in the best interest of the child that a court of the commonwealth assume jurisdiction because (i) the child and his or her parents, or the child and at least one contestant, have a significant connection with the commonwealth, and (ii) there is available in the

commonwealth substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

"(3) the child is physically present in the commonwealth and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child from abuse or neglect or for other good cause shown, provided that in the event that jurisdictional prerequisites are not established pursuant to any other paragraph of this subsection and a court of another state shall be entitled to assert jurisdiction under any other subparagraph of this paragraph then a court exercising jurisdiction pursuant to this clause of paragraph (3) may do so only by entering such temporary order or orders as it deems necessary unless the court of the other state has declined to exercise jurisdiction, has stayed its proceedings or has otherwise deferred to the jurisdiction of a court of the commonwealth; or

"(4) (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that the commonwealth is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that a court of the commonwealth assume jurisdiction."

G. L. c. 209B, § 2 (a).  These can be referred to more simply as (1) home State jurisdiction, (2) default jurisdiction, (3) emergency jurisdiction, and (4) appropriate forum jurisdiction. See MacDougall, supra at 368-369.

Home State jurisdiction exists where Massachusetts is the "home state of the child on the commencement of the custody proceeding."  G. L. c. 209B, § 2 (a) (1) (i).  A "custody proceeding" "includes proceedings in which a custody determination is one of several issues presented for resolution,

such as an action for divorce or separation, guardianship, and care and protection." G. L. c. 209B, § 1. There is no doubt that the father's petition to terminate the guardianship is a custody proceeding; it sought to change the custody of the children from the Fitzgeralds to himself. "Home state" is defined as "the state in which the child immediately preceding the date of commencement of the custody proceeding resided with his [or her] parents, a parent, or a person acting as parent, for at least [six] consecutive months." Id. There is likewise no dispute that the children had lived in California with the Fitzgeralds for at least six consecutive months before the date that the termination petition was filed and that, therefore, California was the home State of the children at the time the petition was filed. We note that California has enacted parallel provisions of the Uniform Child Custody Jurisdiction Act under which it uses the same definition of home State as Massachusetts. See Cal. Fam. Code § 3402(g).[7]

The father argues, however, that the court's jurisdiction should not be assessed as of the date of the filing of the termination petition, but rather as of the date of the original guardianship petition. His view is that guardianships are different from other types of custody orders because the court

---

[7] Also, Cal. Fam. Code § 3421 is parallel to G. L. c. 209B, § 2.

retains continuing oversight of them, as evidenced in this case by the requirement that the Fitzgeralds file annual reports on the status and well-being of the children.  The father also points to G. L. c. 190B, § 5-201, which provides that the guardianship status of minors "continues until terminated, without regard to the location from time to time of the guardian or minor ward."  The continuing nature of a guardianship, in the father's view, means that the court continues to have home State jurisdiction over the guardianship as long as the guardianship lasts -- regardless of the physical location of the children.[8]

Our law does not support this view.  Instead, jurisdiction under the MCCJA must exist at the time the court is being called on to act; it is not enough that home State jurisdiction existed at some previous point in time.  See Adoption of Yvette (No. 1), 71 Mass. App. Ct. 327, 336 n.12 (2008).  The statute provides that the court has "jurisdiction to make a custody determination by initial or modification judgment."  G. L. c. 209B, § 2 (a). "Use of the disjunctive signals a legislative intention to treat modification proceedings as distinct from initial ones.  Reason favors treating modification proceedings as separate and fresh ones because, if it were otherwise, jurisdiction would lodge

---

[8] The father also places much weight on Guardianship of Enos, 41 Mass. App. Ct. 360 (1996).  Enos, however, has no bearing here; it does not involve a minor or the provisions of the MCCJA.

perpetually with the State where the initial custody order had been made, potentially long after that State had any relevant contact with the child." Umina v. Malbica, 27 Mass. App. Ct. 351, 358 (1989).  See MacDougall, 427 Mass. at 370.  "[I]t is not unusual for a court which exercised original jurisdiction to lose 'home state' jurisdiction." Custody of Brandon, 407 Mass. 1, 10 (1990), quoting Umina, supra.  A Massachusetts court does not have continuing home State jurisdiction unless the requirements of MCCJA home State jurisdiction are satisfied at the time that modification of an existing custodial arrangement is sought.  See MacDougall, supra ("Massachusetts continuing jurisdiction in this case is predicated on its having jurisdiction under its own laws"); Umina, supra ("Massachusetts . . . does not explicitly reserve jurisdiction under a continuing jurisdiction or a 'best interest' provision").  Guardianships are no different in this regard from any other custody determination.  For these reasons, we agree with the judge that home State jurisdiction under § 2 (a) (1) did not exist over the father's termination petition.

Nor did the court have jurisdiction under the three remaining subsections of G. L. c. 209B, § 2 (a).  Default jurisdiction under § 2 (a) (2) "allows Massachusetts courts to exercise jurisdiction over a custody proceeding if 'no other [S]tate would have jurisdiction under paragraph (1)' and the

best interest of the child would be served by the court assuming jurisdiction of the matter." Custody of Victoria, 473 Mass. 64, 71 (2015), quoting G. L. c. 209B, § 2 (a) (2).  Here, the children have lived in California for over four years and California accordingly has home State jurisdiction.  Thus, a necessary predicate for default jurisdiction in Massachusetts does not exist.

Emergency jurisdiction under § 2 (a) (3) may be exercised in appropriate circumstances where the child is physically in Massachusetts.  That is not the case here, nor does the father claim any emergency.

Finally, under § 2 (a) (4), appropriate forum jurisdiction "allows Massachusetts courts to exercise jurisdiction over custody if (i) no other State would have jurisdiction under any of the first three paragraphs or another State has 'declined to exercise jurisdiction on the ground that the [C]ommonwealth is the more appropriate forum to determine the custody of the child,' and (ii) it is in the 'best interest of the child' for Massachusetts to assume jurisdiction." Custody of Victoria, 473 Mass. at 71-72, quoting G. L. c. 209B, § 2 (a) (4).  As we have already noted, because California is the home State, jurisdiction would not lie under the first prong of § 2 (a) (4) (i).  In addition, because there was nothing before the judge to suggest that California would decline to exercise jurisdiction

in favor of Massachusetts as the more appropriate forum, jurisdiction also would not lie under the second prong of § 2 (a) (4) (i).[9]

Because jurisdiction did not lie under § 2, we need not examine whether the judge appropriately exercised her discretion when she declined jurisdiction on forum non conveniens grounds under G. L. c. 209B, § 7.  The jurisdictional analysis under G. L. c. 209B is a two-step one in which the first step is to determine whether, under § 2, the court has the power to exercise jurisdiction in a custody proceeding; if the court has that power, the second step is to determine whether it should decline to exercise that power as a matter of discretion under § 7.[10]  See Custody of Brandon, 407 Mass. at 5; Hernandez v. Branciforte, 55 Mass. App. Ct. 212, 217 (2002).  Here, because

---

[9] However, we note that the question of jurisdiction does not yet appear to have been put to a California court, and therefore, we cannot definitively foreclose the possibility that California might decline to exercise jurisdiction for some reason.  If that were to become the case, then the father would not be foreclosed from returning to Massachusetts, claiming jurisdiction under the second prong of § 2 (a) (4) (i).

[10] "A court which has jurisdiction pursuant to [G. L. c. 209B, § 2,] may decline to exercise its jurisdiction at any time prior to making a custody determination upon finding that its assumption of jurisdiction would be (i) violative of the purposes of this chapter; or (ii) would be based upon the illegal or otherwise wrongful conduct of a party; or (iii) would constitute an inconvenient forum and that a court of another state would constitute a more convenient forum."  G. L. c. 209B, § 7 (a).

the court did not have the power to exercise jurisdiction under § 2, we need not examine the judge's alternative conclusion that she would have declined to exercise jurisdiction if she had had it.

This leaves the father's contention that the guardianship decree was void for lack of service. Like the probate judge, we conclude that a petition to remove the guardians is not the appropriate mechanism to challenge the validity of the underlying guardianship decree, which instead should be brought via a rule 60 (b) (4) motion or an independent action. See Reporters' Notes to Rule 60, Mass. Ann. Laws Court Rules, Rules of Civil Procedure, at 1259 (2018) ("Rule 60 [b] [4] allows relief from a void judgment . . . . A judgment is void only if the court rendering it lacked jurisdiction of the subject matter or of the parties, or where it acted in a manner inconsistent with due process of law"). See also Fleishman v. Stone, 57 Mass. App. Ct. 916 (2003) (rule 60 [b] [4] motion used to have judgment declared void for lack of service). The judge deliberately left open the father's ability to bring such a motion or independent action, and nothing in our opinion here is to be read to curtail or diminish the father's right to do so.

Conclusion. We affirm the judgments dismissing the father's petitions to terminate the guardianships for lack of jurisdiction under G. L. c. 209B, § 2, without prejudice to the

father's ability to challenge the guardianship decrees as void pursuant to rule 60 (b) (4).

<u>So ordered</u>.