NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

25-P-909                                        Appeals Court

GUARDIANSHIP OF FINLEY.[1]


No. 25-P-909.

Plymouth.        May 13, 2026. – June 29, 2026.

Present:  Desmond, Hand, & Hodgens, JJ.


Jurisdiction, Custody of child, Nonresident.  Child Custody
    Jurisdiction Act.  Probate Court, Jurisdiction, Guardian,
    Custody of child.  Minor, Custody.  Parent and Child,
    Custody of minor.  Guardian.  Practice, Civil, Guardianship
    proceeding.



Petition for guardianship filed in the Plymouth Division of
the Probate and Family Court Department on April 25, 2022.

A motion for appointment of counsel was heard by Patrick W.
Stanton, J.

An application for leave to prosecute an interlocutory
appeal was allowed in the Appeals Court by D'Angelo, J.


Diana S. Spanos for the guardian.
Deborah J. Bero for the mother.
Andrew Kanter for the father.
Natalie K. Hoppel for the child.


---

[1] A pseudonym.

HAND, J. In this appeal stemming from a guardianship action in the Probate and Family Court, we are presented with two challenges: one by Finley's mother to the Probate and Family Court's subject matter jurisdiction over custody of Finley, whom we will call "the child"; and the other by the child's temporary guardian, K.L., to a judge's interlocutory ruling denying K.L.'s motion for appointment of counsel. Because we conclude that the Probate and Family Court lacked subject matter jurisdiction over the child's custody under G. L. c. 209B, the Massachusetts Child Custody Jurisdiction Act (MCCJA), we do not reach the additional question raised by K.L. whether it was error to deny her motion for appointment of counsel. Due to the lack of jurisdiction, the orders appointing K.L. as the child's temporary guardian and extending her authority are vacated. The matter is remanded to the Probate and Family Court for entry of a judgment dismissing this action.

Background. The following undisputed facts are drawn from the record. We reserve certain other facts for later discussion.

1. Petitions for guardianship of the child. The child was born in February 2022, while the child's parents were living in New Hampshire. The mother gave birth in a Massachusetts hospital, then returned with the child to New Hampshire. The child had medical challenges, and the parents sought treatment

for him in Massachusetts, where the mother had access to health care.[2]  From the time of the child's birth, the mother's aunt, K.L., provided help to the parents with meeting the child's needs.

On March 11, 2022, when the child was approximately two and one-half weeks old, the parents asked K.L. if she would care for the child at her home, which was in Massachusetts, until April 8, 2022.  In the interim, the parents planned to seek suitable housing in Massachusetts for themselves and the child.  K.L. agreed to care for the child, and the parents left the child with her.

On March 16, 2022, K.L. filed a petition for guardianship of the child and an ex parte motion for emergency guardianship in the New Hampshire Circuit Court Family Division (New Hampshire court).  In the petition, K.L. proposed that the New Hampshire court appoint both her and the mother as the child's guardians.  K.L. provided a Massachusetts address for herself and a New Hampshire address for the parents and the child.  She also averred that New Hampshire was the only place the child had lived.  In support of her claim that the child's "essential physical and safety needs [were] not being [met]" while he was

---

[2] The record contains no details about the availability of health care for the child outside of Massachusetts.

in the parents' care, K.L. alleged that the parents failed to support the child's head properly, used baby wipes in place of bathing him, and lacked important items and facilities for his care. In the emergency motion for guardianship, K.L. additionally averred that the parents "were not feeding the baby properly" and that "he lost weight in their care."

On March 17, 2022, a judge of the New Hampshire court granted the ex parte motion and entered an order appointing K.L. as the child's temporary guardian with physical custody of the child; the judge set a review hearing for mid-April 2022. The judge additionally ordered that the mother and the father "may have reasonable visitation" with the child and "[t]he guardian shall set the terms of any visitation." As part of the order, the judge concluded that the New Hampshire court had jurisdiction because the child resided in the county served by that court and the cause of action arose there.

On April 19, 2022, after a hearing and over the parents' objections, a judge of the New Hampshire court granted K.L.'s petition and appointed her sole guardian of the child.[3] The order granted the parents unsupervised visitation with the child

---

[3] The New Hampshire order of appointment authorized K.L. to, inter alia, "tak[e] custody of the person of the [child] and establish the [child's] place of abode within or without [New Hampshire]."

"[a]t a minimum every Saturday and Sunday from 9 am until 6 pm, [and] any weekday 9 am to 6 pm, when requested."[4]  Although the appointment order stated that the guardianship would "remain in effect until an order of termination or modification . . . or until the child's 18th birthday," it also required that a review hearing be scheduled in ninety days.  The judge was explicit that if by then the parents had secured "adequate housing and transportation" and had engaged in certain parenting classes, "the Court will consider terminating this guardianship."

On April 25, 2022, less than one week after K.L.'s appointment in New Hampshire as the child's guardian, K.L. filed a petition in the Massachusetts Probate and Family Court (Massachusetts court) seeking appointment as guardian of the child under G. L. c. 190B.[5]  In her petition, K.L. again averred that "[the] child was not being properly cared for"; she also stated that she had been "granted guardianship in NH" and provided the docket number from the New Hampshire court.  K.L.

---

[4] The order additionally provided that "[t]he parents shall have liberal visits and [the child] will be made available to them at all reasonable times for visits.  No request for visits during reasonable hours shall be denied."

[5] In her emergency affidavit dated April 24, 2022, K.L. averred that she "would like the case to be transferred to Massachusetts" and "to close out the New Hampshire case." However, K.L. did not take any steps to domesticate the New Hampshire guardianship in Massachusetts.  See G. L. c. 209B, § 12 (a); N.H. Rev. Stat. Ann. § 463:32-c(I).

moved to waive notice of the hearing on her Massachusetts petition, but a judge of the Massachusetts court (first judge)[6] denied the motion, reasoning that "[t]here is no emergency, given the fact that a valid guardianship exists in New Hampshire."  On June 9, 2022, after a hearing, a different judge in the Massachusetts court (second judge) appointed K.L. as the child's temporary guardian.[7]  See G. L. c. 190B, § 5-204 (b). The duration of the temporary guardianship was limited by statute to ninety days but was extended several times over the parents' objection.  See id. (after initial appointment of temporary guardian, judge "may for good cause shown extend the appointment for additional [ninety] day periods").  It appears undisputed that the Massachusetts temporary guardianship remained in effect at the time of oral argument in this matter, nearly four years after K.L.'s initial appointment.

On July 25, 2022, after K.L. failed to appear at the scheduled status conference in the New Hampshire court, a judge

---

[6] Several different judges ruled on motions and petitions in the Massachusetts action.

[7] The order of appointment stated that notice of the hearing was "[s]hortened or waived in whole or in part because the Court finds that an immediate emergency situation exists."  See G. L. c. 190B, § 5-204 (e).  However, the order did not describe the nature of the emergency, and the record before us includes evidence that the parents received timely notice.  See G. L. c. 190B, § 5-204 (d).  The parents filed a joint notice of appearance and objection on July 27, 2022.

of the New Hampshire Court dismissed the New Hampshire guardianship action and ordered the child returned to the parents. In doing so, the judge noted that K.L. was seeking guardianship in Massachusetts and stated that "[g]iven existing orders of this Court, the Court questions whether Massachusetts has jurisdiction to issue guardianship orders." On July 26, 2022, K.L. obtained an abuse prevention order in her own name in a District Court in Massachusetts; the order included a prohibition on the mother contacting the child "unless through DCF," in reference to the Department of Children and Families. See G. L. c. 209A, § 3. There is no evidence that the child or the parents were then involved with DCF. The abuse prevention order was vacated after a hearing on August 9, 2023.

2. The mother's motion to vacate the Massachusetts guardianship. On March 7, 2023, the mother filed a motion in the Massachusetts court to vacate the temporary guardianship and dismiss the guardianship petition. In support of the motion, the mother argued that the Massachusetts court lacked subject matter jurisdiction to determine the child's custody because New Hampshire was the child's "home state" for purposes of G. L. c. 209B, § 1, and the New Hampshire court had exercised and retained jurisdiction over custody proceedings involving the child. See G. L. c. 209B, § 2. She characterized the New Hampshire court's dismissal of the New Hampshire guardianship

action as "a valid custody order" that restored custody to the parents.  The second judge denied the motion in a margin endorsement.[8]

3.  K.L.'s request for appointment of counsel.  K.L. was self-represented when she filed the Massachusetts petition for guardianship; she later hired private counsel to represent her in this action.  In July 2024, while represented by private counsel, K.L. filed a motion seeking appointment of counsel for herself.[9]  K.L. relied on the Supreme Judicial Court's opinion in Guardianship of K.N., 476 Mass. 762, 766 (2017), and on G. L. c. 190B, § 5-212 (d), which provides, in part, that "[f]or proceedings pursuant to a petition to remove a guardian of a minor child, the guardian shall have the right to counsel."

After the first judge denied the motion, K.L. sought relief from a single justice of this court by filing a petition for

---

[8] So far as the record reveals, there was no hearing on the mother's motion to vacate the guardianship, and the second judge made no findings.  We take this opportunity to underscore the critical importance of such findings, made after a hearing, to our review of a challenge to subject matter jurisdiction in disputes involving custody determinations made under the MCCJA.

[9] K.L. also filed a form requesting appointment of counsel on September 8, 2022, which her brief claims was a request for counsel for herself.  That filing requested appointment of an attorney for "[t]he person named above as RESPONDENT," however, and the only name on the form appearing above as respondent was that of the child.  In June 2023, the Massachusetts court appointed counsel for the child.

interlocutory review.  See G. L. c. 231, § 118, first par.  The

single justice remanded the matter to the trial court for

additional consideration.[10]  On remand, the first judge

reaffirmed his decision to deny the motion for appointment of

counsel, explaining that this proceeding was an "original filing

in Massachusetts for the appointment of a guardian" rather than

an action for the removal of a guardian under G. L. c. 190B,

§ 5-212.  The single justice subsequently denied K.L.'s petition

for relief.  K.L. moved for leave to appeal to a panel of this

court, and the single justice granted leave to file an

interlocutory appeal from the first judge's orders denying her

motion for appointed counsel.

Discussion.  1.  The propriety of the mother's challenge to
the interlocutory ruling on subject matter jurisdiction.  We

begin with a procedural matter.  The mother did not seek

interlocutory review of the second judge's order denying her

motion to vacate the guardianship based on the Massachusetts

court's lack of subject matter jurisdiction over the child's

custody.  Instead, she obtained leave from this court to "raise

the issue" as an appellee in K.L.'s panel appeal from the orders

_____

[10] K.L. represented to the single justice that the first
judge had denied the motion for appointment of counsel because
K.L. was a temporary guardian.  The single justice remanded for
consideration whether the New Hampshire order appointing K.L. as
guardian entitled her to appointed counsel in Massachusetts.

denying K.L.'s motion for appointment of counsel.  K.L. does not dispute the correctness of this order.[11]  Absent such a challenge from K.L., and mindful that subject matter jurisdiction may be raised at any time including on appeal, we consider the mother's argument.  See Commonwealth v. Nick N., 486 Mass. 696, 702 (2021), quoting Commonwealth v. DeJesus, 440 Mass. 147, 151 (2003) ("A question of subject matter jurisdiction may be raised at any time . . . and [is] not waived even when not argued" [quotation omitted]); Rental Prop. Mgt. Servs. v. Hatcher, 479 Mass. 542, 547 (2018) ("whenever a problem of subject matter jurisdiction becomes apparent to a court, the court has 'both the power and the obligation' to resolve it" [citation omitted]).

2.  The merits of the mother's challenge to subject matter jurisdiction.  As recently stated by the Supreme Judicial Court,

> "'[i]n Massachusetts, jurisdiction over child custody proceedings possibly involving the jurisdictional claims of other States is determined according to' the MCCJA.  Under the MCCJA, 'a court must determine whether it has the power to exercise jurisdiction in a custody proceeding and, if so, whether it should exercise that power under the standards provided in the' act."

---

[11] We understand that K.L. is the only party opposing the mother's jurisdictional argument.

Care & Protection of Faraj, 496 Mass. 426, 430 (2025), quoting

Custody of Brandon, 407 Mass. 1, 5 (1990).[12]

a. The jurisdiction of the Massachusetts court. The MCCJA

limits the jurisdiction of Massachusetts courts to cases in

which

> "(1) the commonwealth . . . is the home state of the child
> on the commencement of the custody proceeding . . .; or
>
> "(2) it appears that no other state would have jurisdiction
> under paragraph (1) and it is in the best interest of the
> child that a court of the commonwealth assume jurisdiction
> because (i) the child and his or her parents . . . have a
> significant connection with the commonwealth, and (ii)
> there is available in the commonwealth substantial evidence
> concerning the child's present or future care, protection,
> training, and personal relationships; or
>
> "(3) the child is physically present in the commonwealth
> and (i) the child has been abandoned or (ii) it is
> necessary in an emergency to protect the child from abuse
> or neglect or for other good cause shown . . .; or
>
> "(4) (i) it appears that no other state would have
> jurisdiction under prerequisites substantially in
> accordance with paragraph (1), (2) or (3), or another state
> has declined to exercise jurisdiction on the ground that
> the commonwealth is the more appropriate forum to determine
> the custody of the child, and (ii) it is in the best
> interest of the child that a court of the commonwealth
> assume jurisdiction."

---

[12] Although at first blush the issue sounds like personal jurisdiction, it is well established that the Legislature intended by the MCCJA to limit the power of a State's court to adjudicate the subject matter of child custody. See, e.g., Adoption of Twyla, 104 Mass. App. Ct. 434, 445 (2024); Adoption of Anisha, 89 Mass. App. Ct. 822, 828 (2016).

G. L. c. 209B, § 2 (a).  We conclude that none of these provisions provide the Massachusetts court with jurisdiction in this case.

     i.  "Home state" jurisdiction.  The child was approximately two months old at the time that K.L. filed the petition for guardianship in Massachusetts.  The MCCJA defines the "home state" of a child -- and in particular, a child under six months old -- as

> "the state in which the child immediately preceding the date of commencement of the custody proceeding resided with his parents, a parent, or a person acting as parent, for at least [six] consecutive months, and in the case of a child less than [six] months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the [six]-month or other period."

Care & Protection of Faraj, 496 Mass. at 431, quoting G. L. c. 209B, § 1.  In a case involving a parent who lives in one State but gives birth in another, the child's "home state" is the State in which that parent resides if that parent "plans to return to the parent's home . . . with the child upon discharge from the hospital."  Care & Protection of Faraj, supra at 433-434, and cases cited.  A parent "cannot confer home state jurisdiction on a state where she does not actually live by declaring an intention to begin living there prospectively" (citation omitted).  Id. at 433.

Here, the parents resided in New Hampshire at the time the child was born. Although the mother delivered the child in a Massachusetts hospital, the family did not then relocate to Massachusetts; the parents returned to New Hampshire with the child following his birth and brief stay in the hospital's neonatal intensive care unit. Where the parents continued to live in New Hampshire, neither the mother's choice to deliver the child in a Massachusetts hospital nor the parents' intention to relocate to Massachusetts conferred "home state" jurisdiction on Massachusetts courts. See Care & Protection of Faraj, 496 Mass. at 433-434.

Nor did K.L.'s care of the child establish Massachusetts as his "home state." G. L. c. 209B, §§ 1, 2 (a) (1). The child was not living "with his parents" in Massachusetts when K.L. took the child to Massachusetts at the parents' request and cared for him there for several weeks. G. L. c. 209B, § 1. To the extent that K.L. was then "a person acting as parent" to the child, she had not lived with him in that capacity in any location "from birth." Id. Indeed, she had had custody of the child through the New Hampshire guardianship for less than one week at the time she petitioned for guardianship in Massachusetts. Thus, Massachusetts did not have "home state" jurisdiction under the MCCJA.

ii.  Default jurisdiction.  "Default jurisdiction, as set forth in G. L. c. 209B, § 2 (a) (2), grants jurisdiction to a Massachusetts court where (1) it appears that a child has no 'home state' and (2) the child's best interest is served by having a Massachusetts court determine the child's custody." Care & Protection of Faraj, 496 Mass. at 432.  Though Massachusetts is not this child's "home state," it is not the case that "it appears . . . no other state would have [home state] jurisdiction," G. L. c. 209B, § 2 (a) (2), such that we could say the child has none.  When determining whether another State appears to have "home state" jurisdiction as relevant to the MCCJA, we apply G. L. c. 209B, § 2 (a) (1).  See Custody of Vale, 106 Mass. App. Ct. 381, 391 (2025).[13]  See also Custody of Victoria, 473 Mass. 64, 72 (2015), citing MacDougall v. Acres, 427 Mass. 363, 366 (1998) (Massachusetts law applies when "determining custody jurisdiction").[14]  Based on the facts we

_____

[13] We recognize that the requirements of the MCCJA are mandated by Federal law and apply to all States.  See 28 U.S.C. § 1738A(c)(2); Custody of Vale, 106 Mass. App. Ct. at 388 n.8.

[14] In MacDougall, 427 Mass. at 369 n.6, the court stated "[i]f it appears that another State may have 'home state' jurisdiction" but that State has not adopted a framework substantially similar to the MCCJA, "other provisions of the MCCJA allow Massachusetts to exercise jurisdiction if it is appropriate."  That is not the case here, where New Hampshire's corresponding statute, N.H. Rev. Stat. Ann. § 458-A:1(VII), defines "home state" as

have already discussed about where the child lived "from birth," we conclude that -- at a minimum -- it "appears" under Massachusetts law that New Hampshire is the child's "home state." G. L. c. 209B, §§ 1, 2 (a) (2). Accordingly, the MCCJA did not confer on the Massachusetts court default jurisdiction to act here.

iii. Emergency jurisdiction. "Pursuant to G. L. c. 209B, § 2 (a) (3), a Massachusetts court has emergency jurisdiction when a child is 'physically present' in Massachusetts and either 'has been abandoned' or 'an emergency' requires intervention to, inter alia, 'protect the child from abuse or neglect.'" Care & Protection of Faraj, 496 Mass. at 435. As noted by the first judge in his order denying K.L.'s initial motion to waive notice, "a valid Guardianship exist[ed] in New Hampshire" when K.L. filed the Massachusetts petition, such that "protections [we]re in place." Where the child was in the custody of K.L., his legal guardian, the record supports neither abandonment nor

---

"the state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child-custody proceeding. In the case of a child less than 6 months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period."

emergency,[15] and we conclude that G. L. c. 209B, § 2 (a) (3), did not confer jurisdiction.

iv. _Appropriate forum jurisdiction_. For a Massachusetts court to exercise jurisdiction under G. L. c. 209B, § 2 (a) (4), it must be the case either that no other State appears to have "home state," default, or emergency jurisdiction; or that "another state has declined to exercise jurisdiction on the ground that [Massachusetts] is the more appropriate forum to determine the custody of the child." G. L. c. 209B, § 2 (a) (4). In addition, it must be "in the best interest of the child" that a Massachusetts court assumes jurisdiction. Id. See _Care & Protection of Faraj_, 496 Mass. at 435.

As we have noted, in this case, the child's "home state" appears to be New Hampshire. "Thus, under G. L. c. 209B, § 2 (a) (4), the [Massachusetts court] was empowered only to exercise appropriate forum jurisdiction after [New Hampshire] 'declined to exercise [its "home state"] jurisdiction.'" _Care & Protection of Faraj_, 496 Mass. at 436, quoting G. L. c. 209B,

---

[15] Even if a child could be "abandoned" while in the custody of a legal guardian, leaving the child in K.L.'s care would not necessarily constitute abandonment. See _Adoption of Arianne_, 104 Mass. App. Ct. 716, 721 (2024); _Adoption of Yvette (No. 1)_, 71 Mass. App. Ct. 327, 340 (2008). Further, despite K.L.'s contention that the parents "failed to return" for the child, the parents have repeatedly objected to K.L.'s petitions and attempted to visit the child throughout the proceedings.

§ 2 (a) (4) (i).  New Hampshire did not decline to act, however -- to the contrary, the New Hampshire court exercised its jurisdiction and ultimately ordered the child returned to the parents.  To the extent that New Hampshire could have declined to exercise its "home state" jurisdiction, there is no indication that any Massachusetts judge communicated with the New Hampshire judge to clarify New Hampshire's position on the issue.  See Custody of Vale, 106 Mass. App. Ct. at 390-391, quoting Adoption of Anisha, 89 Mass. App. Ct. 822, 828 (2016) ("[T]he MCCJA recognizes that in some cases, jurisdiction may not be clear and communications between courts of different States may be required before the question of jurisdiction can be definitively resolved").  See also G. L. c. 209B, § 7 (c) (authorizing Massachusetts courts to communicate with "courts of any other relevant jurisdiction"); N.H. Rev. Stat. Ann. §§ 458-A:9(I) ("A court of this state may communicate with a court in another state concerning a proceeding arising under this chapter"), 458-A:18 (court with jurisdiction over "child-custody determination may decline to exercise its jurisdiction at any time if it determines . . . another state is a more appropriate forum").  Given the facts of the case do not satisfy the criteria for exercising appropriate forum jurisdiction under G. L. c. 209B, § 2 (a) (4) (i), we need not consider whether the

Massachusetts court assuming jurisdiction would be in the child's best interests under G. L. c. 209B, § 2 (a) (4) (ii).

In sum, the facts of this case meet none of the four requirements set forth in G. L. c. 209B, § 2. Thus, we conclude that the Massachusetts court did not have subject matter jurisdiction over decisions concerning the child's custody when K.L.'s petition was filed. See Custody of Victoria, 473 Mass. at 68-69. Given the lack of jurisdiction, all orders issued in the case by the Massachusetts court are void. See Cohen v. Cohen, 470 Mass. 708, 717 (2015) ("[w]here a court lacks subject matter jurisdiction, the judgment is void" [citation omitted]).

b. The effect of the pending New Hampshire custody action on the jurisdiction of the Massachusetts court. Even if we concluded that a Massachusetts court could have exercised jurisdiction over this custody action under G. L. c. 209B, § 2 (a), which we do not, the mother's motion to vacate still should have been allowed. Except in circumstances involving an emergency, the MCCJA prohibits a Massachusetts court with jurisdiction over a custody proceeding from exercising that jurisdiction

> "in any custody proceeding commenced during the pendency of a proceeding in a court of another state where such court of that state is exercising jurisdiction consistently with the provisions of this section for the purpose of making a custody determination, . . . unless the court of the other state shall decline jurisdiction . . . or shall stay its

proceedings or otherwise defer to the jurisdiction of a court of the commonwealth."

G. L. c. 209B, § 2 (d). We have already said this case did not involve an emergency.

K.L. commenced this action in April 2022, several weeks after she had successfully petitioned for temporary guardianship in New Hampshire and before that matter was dismissed by the New Hampshire judge. As we have explained, for MCCJA purposes, New Hampshire appeared to have "home state" jurisdiction over decisions for the child's custody at the time it acted on his behalf. This Massachusetts action was thus "commenced during the pendency of a proceeding in a court of another state" that was "exercising jurisdiction consistently with the provisions of [G. L. c. 209B, § 2,] for the purpose of making a custody determination." G. L. c. 209B, § 2 (d). Because emergency jurisdiction did not exist and the New Hampshire court neither declined jurisdiction nor stayed its proceedings, any authority over the child's custody that was held by the Massachusetts court could not properly have been exercised.

3. K.L.'s right to appointed counsel. Because we conclude that the Massachusetts court lacks jurisdiction over this matter and the action must therefore be dismissed, we need not reach the merits of K.L.'s argument that she was entitled to appointed

counsel under G. L. c. 190B, § 5-212 (d), and we decline to do so.

Conclusion. The orders appointing K.L. as temporary guardian of the child and extending her authority are vacated. The matter is remanded to the Probate and Family Court for entry of a judgment dismissing this action.

So ordered.